# THE CENTRAL PACIFIC RAILROAD COMPANY OF CALIFORNIA *v.* JAMES PEARSON AND MARY SHAW *et als.*

BILL OF EXCEPTIONS.—A bill of exceptions must be reduced to writing and settled by the Judge immediately upon taking the exception.

NEW TRIAL IN PROCEEDINGS TO CONDEMN LAND.—The provisions of the Practice Act in relation to new trials have no application to a motion to set aside the report of Commissioners appointed to assess damages for taking land for public uses.

REPORT OF COMMISSIONERS TO ASSESS DAMAGE FOR TAKING LAND. — The report of Commissioners, appointed by the Court to assess damages for taking land for public uses, should show upon its face a strict compliance on the part of the Commissioners with the provisions of the statute, and the rules of law applicable to the several questions which may arise in the progress of the investigation.

IDEM.—Commissioners appointed to assess damages for taking land for public uses exercise a special delegated power, and their report should show upon its face that they have acted in the appointed mode.

REVIEW OF REPORT ASSESSING DAMAGE FOR TAKING LAND.—The review by the Court of the report of Commissioners appointed to assess damages for taking land for public uses, is intended to be had upon the report itself, so far as all

matters which should be stated there are concerned, and not upon bills of exceptions or statements.

SETTING ASIDE OR AMENDING REPORT OF COMMISSIONERS.—If the report of Commissioners, appointed to assess damages for taking land for public uses, does not show fully what the proceedings before the Commissioners were, it should be set aside for that reason, or sent back to the Commissioners for amendment. The Court has power to compel the Commissioners to amend their report.

IDEM.—If good cause exist for setting aside such report, outside of the report itself, such as fraud, or misconduct of the Commissioners, it may be shown by affidavits or other competent evidence, or in any legal mode which the Court may prescribe.

AMENDMENT TO REPORT OF COMMISSIONERS.—A statement of matters proper to be inserted in the report of Commissioners appointed to assess damage for taking land for public uses, signed by them after the trial, and in the form of a bill of exceptions, should not be rejected by the Court on motion to set aside the report, but should be considered a part of the report itself, as an amendment thereto.

EVIDENCE IN PROCEEDINGS TO CONDEMN LAND.—Commissioners appointed to assess the damage for taxing land for public uses must hear the evidence offered by the parties, and, in doing so, must be governed by the same rules by which the admission and exclusion of evidence in other cases is regulated.

IDEM.—In proceedings to condemn land for public uses, opinions of witnesses as to the value of the land, who are unacquainted with its market value, or who do not form such opinions upon a knowledge of the location and adaptation of the land to other uses not speculative, should not be received in evidence.

IDEM.—In such proceedings witnesses giving their opinions of the value of the land cannot, upon direct examination, testify as to particular transactions, such as sales of adjoining lands, or how much has been offered for adjoining land or the same land, nor should testimony be received in relation to the value of wharf privileges which may at some future time be attached to the land by reason of its boundary upon tide waters.

DAMAGES FOR LAND CONDEMNED.—In proceedings to condemn land taken for public uses, the owner of the land should not be allowed damages for the cost of removing his personal property from the premises.

IDEM.—What damages the statute gives besides the value of the land not decided.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The Central Pacific Railroad Company of California, a corporation formed under the laws of this State, to construct a railroad from Sacramento, through the Counties of Nevada and Placer, to the eastern boundary of the State, filed its petition in the District Court of Sacramento County to acquire and appropriate, for the construction, operation, and maintenance of the track of their railroad, and for water stations, depots, machine and workshops, turntables, and other build-

ings for the same, a large number of lots and blocks in Slaters' Addition, Point Comfort, and between Second and Third streets, Fourth and Fifth, and Fifth and Sixth streets, in the northern part of the City of Sacramento. There were a large number of persons made defendants, but the respondents, Pearson and Shaw, were the only ones who answered and made a contest.

Joseph Hull, Howell Clark, and D. A. DeMerritt were by the Court appointed Commissioners to assess the damages, and the 15th day of November, 1866, was named in the order of the Court as the day for the Commissioners to meet. On the 1st day of December, 1866, the Commissioners filed their report, in which they allowed several thousand dollars as the value of lots claimed by respondents, Shaw and Pearson. They also allowed, in their report, to Pearson, seven hundred dollars for damages and expenses in removing property from his lots, and five hundred dollars for interruption in his business and losses thereby, and to Mrs. Shaw, for damages in interruption and suspension of business, five hundred dollars. The report did not contain any of the evidence.

On the 14th day of December, 1866, the Commissioners signed and filed in Court a bill of exceptions, in which they stated that the respondents introduced evidence to prove the loss they would sustain by removing their places of business, and what it would cost them to remove their personal property, and that they also, to prove the value of their lots, introduced evidence of offers made to them by divers persons for the same, and the opinions of witnesses, as to their market value, who were not engaged in buying or selling real estate, and whose opinions were not based on a knowledge of what the property would sell for in market. The bill also stated that Mrs. Shaw introduced evidence to show that the value of her lots was increased by the fact that, in connection with the Sacramento River opposite the lots, she claimed the right to wharf out and erect landings and ware-

32

houses.    The bill of exceptions stated that the plaintiff, by its attorneys, objected to the introduction of this evidence, but that the Commissioners overruled the objection.

On the 15th day of December, 1866, the plaintiff, by its attorneys, served on defendants' attorneys a notice to set aside the report, for reasons stated in the bill of exceptions, which notice was filed in the District Court on the 20th day of December thereafter.    On the day last mentioned a written motion was filed in accordance with the notice.    The District Court refused to set aside the report, and confirmed the same.    The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*E. B. Crocker,* and *Robinson, Ramage & Dunlap,* for Appellant.

The Commissioners reported only their conclusions upon the evidence.    The one hundred and eighty-eighth section of our Practice Act provides that an exception, when necessary, must be taken at the time of the trial; and the one hundred and eighty-ninth section of the same Act, that " The point of exception shall be particularly stated, and may be delivered in writing to the Judge, or, if either party require it, shall be written down by the Clerk.    When delivered in writing or written down by the Clerk, it shall be made conformable to truth, or be at the time corrected until it is so made conformable.    When not delivered in writing or written down by the Clerk, it may be entered in the Judge's minutes, and afterwards settled in a statement of the case, as provided in this Act."    But the whole Act is silent as to when the exceptions shall be drawn up in form, or signed by the Court or other parties trying the cause.

Upon the merits of the case, we say that the Commissioners acted upon wrong principles in assessing the damages, and in all cases where such is the case, the award will be set aside, and even affidavits might be used to establish the facts. (*New Jersey Railroad Co.* v. *Suydam,* 2 Harr., N. J., 25.)

The defendant Mary Shaw introduced evidence to prove that certain wharf privileges on the Sacramento River, opposite Lots One, Two, Three, and Eight, in Point Comfort, were valuable, and would enhance the value of said lots; to all of which testimony the petitioner objected, which objection was overruled, and petitioner then and there excepted. It will be seen by the Statutes of 1863, p. 288, that the Legislature of the State has granted to the petitioner the right to wharf out opposite the lots in question, and therefore the defendant Shaw is not entitled to any compensation for a right which did not belong to her, but did belong to the plaintiff.

The Legislature had the right to grant the wharf privilege to petitioner, and the defendant Shaw cannot complain or recover damages therefor. (*Gould* v. *Hudson R. R. Co.*, 6 N. Y. 522; *Lansing* v. *Smith*, 4 Wend. 9.)

Were the opinions of the witnesses as to the value of the property when they did not know of any sales, or what the property was worth in the market, properly received? By reference to the authorities, it would seem that this was not of that class of cases in which the opinions of such witnesses was competent. (1 Greenl. on Ev., Sec. 440.) Nor is the testimony of the witnesses as to what the defendants had been offered and refused, a proper standard of value, or a proper mode of assessing such value. The testimony should have been confined to what the witnesses thought the property was worth, and that based upon the market value of similar property in the neighborhood.

The admission of the testimony of such offers would create a very unsafe rule of evidence, and open the door to the manufacturing of testimony for the occasion. The plaintiff, who wished to recover large damages, could easily procure some one to make a sham offer, and with the same propriety a defendant could procure persons to state that they would not give more than a certain sum—far less than the market value thereof. These evils should be guarded against, and such precedents avoided.

Was it competent for the defendants Shaw and Pearson to prove and the Commissioners to assess as just compensation for the value of the property sought to be taken, the damages they might sustain in removing their personal property therefrom?

The Constitution of the United States does not confer a right to take private property for public use, but limits the extent to which that power may be granted or exercised. The Legislature may prescribe the power of a railroad company, and also fix the rights and the liabilities of the parties, which power has been exercised in this State.

In the eight hundred and fifty-fifth paragraph, section thirty, Hittell's Digest, it is provided as follows: "The said Commissioners shall proceed to view the several tracts of land, as ordered by the said Court or Judge, and shall hear the allegations and proofs of the said parties, and shall ascertain and assess the compensation for the land sought to be appropriated by the company," etc.; but the Act gives no compensation for consequential damages, or for other damages than the land actually taken; and by the general rule of construction, the damages are limited to the value of the land, and do not extend to damages for removing personal property therefrom.

In the case of *Henry* v. *The Pittsburg and Alleghany Bridge Co.*, 8 Watts & Sergeant, 85, the Court held that neither the State, nor a person artificial or natural, acting by authority under a law which the Legislature is competent to make, is answerable for consequential damages for the construction of a highway further than is specially provided by the law itself. (See, also, *Monongahela Navigation Co.* v. *Coons*, 6 W. & S. 114; *Miffin* v. *Railroad Co.*, 16 Penn. 193; *Pittsburg* v. *Chester Valley Railroad Co.*, 21 Penn. 100.)

And the Court held in the above cases that the Act was constitutional, although no provisions were made for other damages than the value of the land taken. (See, also, *O'Conner* v. *Pittsburg*, 6 Harris, Penn., 187; *Paul* v. *Carver*, 26 Penn. 288; *Albany North Railroad* v. *Lansing*, 16 Barb. 68; *Clark*

v. *Saybrook*, 21 Conn. 313; *Winslow* v. *Gifford*, 6 Cush. 327; *Rogers* v. *Kennebeck and Portland Railroad Co.*, 36 Maine, 319; *Cushman* v. *Smith*, 34 Maine, 247; *Hatch* v. *Vt. Central R. R. Co.*, 25 Vt. 49; Sedgwick on Constitutional and Statutory Construction, 519–523; Pierce on Railways, 148–197.)

In *Sacramento Valley Railroad Company* v. *Moffit*, 6 Cal. 74, the Court recognizes the doctrine that no damages can be allowed unless recognized by the statute, and there holds that the statute then under consideration, which reads: "The Commissioners shall ascertain and report the proper compensation to be made for the land or other property taken or injuriously affected," is broad enough to include fencing, etc. But the statute under which this proceeding is taken, (see 1 Hitt. Laws, Art. 855,) only authorized them to "ascertain and assess the compensation for the land sought to be appropriated," leaving out the words "or other property injuriously affected," evidently intending that whatever damages a party may sustain by a removal shall be the defendant's sacrifice for the public good.

*Henry Starr*, for Respondent Mary Shaw.

The bill of exceptions is *ex parte*, and not entitled to consideration. There was no legal responsibility attached to the Commissioners at the time they signed it.

*H. H. Hartley*, and *Bowie & Catlin*, for Respondent Pearson.

The question as to the propriety of the item of seven hundred dollars compensation for expense of removing personal property from the condemned lots, is fairly before the Court upon the face of the report. The railroad company claim that they are not required to pay for anything which they do not themselves take and use. They do not want any of Pearson's property except the land the value of which was submitted to the Commissioners.

Section twenty-eight of the law (Com. Laws, 134) says

they are appointed "to ascertain and assess the compensation to be paid to the person or persons having or holding any right, title, or interest in or to such of said tracts of land, for and in consideration of the appropriation of such land to the use of the company." Again, section thirty says: "They shall ascertain and assess the compensation for the land sought to be appropriated, to be paid by said company to the person or persons," etc.

We contend that the fair construction of these sections is, that the Commissioners are to award the "just compensation" referred to in the Constitution, and that a proper rule of construction would require us, in a case of doubt as to the intention of the Legislature arising from any peculiar language of the statute, to conform the statute to the Constitution. The statute also being in derogation of common right, should be construed liberally, so as to protect as far as possible the right of the person whose property is taken.

If it had been the intention of the Legislature to require the company only to pay for the value of the land in this proceeding, there would have been no difficulty in finding words to express that intention, and the injured party would then have been left to his ordinary action in law, to recover the losses suffered by reason of taking his land and paying him only for its abstract value; but such was not the intention. On the contrary, the Commissioners have jurisdiction of the whole subject matter, and it will be held a legal presumption that they have awarded the full, just compensation to which the defendant is entitled by reason of the taking. The award is a bar in an action at law for further damages. (Redfield on Railroads, 152; Pierce on Railroads, 168.)

The report of the Commissioners does not set forth the evidence; it simply says: "We award Pearson seven hundred dollars for cost and expense of removing personal property from the condemned lots." Now, all this Court desires to know is, whether there may be a taking by the railroad company which will cause, as a direct consequence, such losses to the defendant.

The presumption must be in favor of the award, so far as the facts are concerned; the legal question only remains. And upon this point we refer to the general doctrines laid down in Redfield and Pierce, and Sedgwick, and to the English case quoted on page five hundred and sixty-nine of Sedgwick, in which a brewer was awarded an allowance for the loss occasioned to his business by having to remove from the land taken to another place. Upon this point we also refer to a late decision of this Court in the case of *The San Francisco, Alameda, and Stockton Railroad Company* v. *Andrew Caldwell et al.*, 31 Cal. 367.

The point under discussion was the constitutionality of that portion of section thirty which allows benefits to be estimated in favor of the railroad company, and it was sustained; and the principal ground upon which it was sustained was because the private party was entitled to have *all his losses compensated*, and that "just compensation" obviously meant the net result of his losses, after deducting his gains. The Court say that "just compensation requires a full indemnity—nothing more." And after enumerating several ways in which the taking of land may cause damage to the owner, say: "All these and the like are or may be matters of damage to the owner of the land taken, and of the adjacent land, for which he is entitled to a just compensation." Again the Court say: "In the abstract, the question is easily solved by ascertaining the value of the land and the damages sustained by reason of taking it." To the same effect are *White* v. *Charlotte and South Carolina Railroad Company*, 6 Rich., S. C., 47; and *Greenwich and Columbia Railroad* v. *William Partlow*, 5 Rich., S. C., 428.

In the case of *The Sacramento Valley Railroad Company* v. *Moffit*, 6 Cal. 74, the Court held that the railroad company must make compensation for the cost of building fences along the line of the lands taken, and appellant's counsel claim that this decision, being under a statute differently worded from the one under which this proceeding is taken, supports the idea that the railroad company is required to

make no compensation other than for the abstract value of the land taken. They forget that the very statute under which they proceed recognizes their liability to compensate for this kind of damage by providing that in case the railroad company shall beforehand agree to build "good and sufficient fences" along the line of the lands taken, that "no sum or price for such fences shall be included in the compensation or damages to be awarded by said Commissioners." (Com. Laws, Art. 855, Sec. 30.)

The Commissioners, in their report made and filed on the first of December, give a summary account of their proceedings up to that date, and no mention is made of their having signed a bill of exceptions. The bill must be regarded as having been signed on the fourteenth of December, at a time when the Commissioners had been fourteen days *fanctus officio*. But we claim that an examination of the so called bill of exceptions will not disclose any error whatever. The exceptions do not show that the Commissioners acted upon any erroneous principle in making their award. At the most, they merely show that the Commissioners heard evidence which is claimed to be irrelevant, and which might be inadmissible before a jury in an action at law, but they do not show that such evidence affected the award. It does not even appear that there was any conflict of evidence upon the points to which the alleged irrelevant testimony related. It does not appear, in any manner, that the finding of the Commissioners as to the value of the several lots was too high, or that the finding was not fully supported by evidence introduced by the petitioners themselves.

These tribunals are not bound by the same technical rules of evidence which prevail with Courts and juries. They are selected for their supposed peculiar fitness to act as appraisers. They are required to visit and inspect the subject matter of the investigation; to act upon their own personal knowledge of the matter submitted to them. They may reject the evidence of the witnesses brought before them, and act upon the evidence which their own inspection

of the property, their own personal acquaintance with it, and their own judgment, reveal to them. In order to set aside an award of Commissioners in these kinds of proceedings, it must appear either that the irrelevant evidence was the foundation of the award, or that the award allowed matters of damage which the owner was not under any circumstances entitled to. (*Troy and Boston Railroad Company* v. *Lee*, 13 Barb., N. Y., 169; 16 Barb., N. Y., 103; *Albany Railroad* v. *Lansing*, 16 Barb. 68.)

By the Court, SANDERSON, J.:

Testing the ruling of the Court below in relation to the appellant's bill of exceptions—so called—by the provisions of the Practice Act concerning new trials in civil cases, we should be compelled to sustain it, if, as seems to be conceded, the bill of exceptions was not settled by the Commissioners at the time the proceedings which it recites were had. Under sections one hundred and eighty-eight and one hundred and eighty-nine of the Practice Act, a bill of exceptions, in order to be available on a motion for new trial, must be reduced to writing, and settled by the Judge immediately upon the taking of the exception. If the exception is not thus reduced to writing, and settled at the time it is taken, it can be brought before the Court for review only by a statement settled in the mode provided in section one hundred and ninety-five.

But, after a careful examination of the question, we are of the opinion that the provisions of the Practice Act in relation to new trials have no application to a motion of this character. The statute under which these proceedings were taken does not, in terms, make the provisions of the Practice Act in relation to new trials applicable to a motion to set aside a report of the Commissioners, nor does it by necessary implication.

It is well settled that persons who exercise but a special,

33

delegated power, must show upon the face of their proceedings that they have acted in the appointed mode. Said Mr. Chief Justice Holt, in *Rex* v. *Inhabitants of Audly*, 2 Salk. 526: "If a particular jurisdiction does not show the matter to be within its authority, it must be taken to be without it." In the case of *The King* v. *Croke*, 1 Cowp. 26, which was a proceeding like the present, Lord Mansfield said: "This is a special authority delegated by Act of Parliament, to particular persons to take away a man's property and estate against his will; therefore it must be strictly pursued, and must appear to be so upon the face of the order."

In this class of cases the record should show upon its face a strict compliance on the part of the Commissioners with the provisions of the statute and the rules of law applicable to the several questions which may arise in the progress of their investigation. Without undertaking to indicate all the matters which should be made to appear upon the face of the report, we deem it advisable to designate some of them by way of illustration.

The report should show that the Commissioners met at the time and place designated in the order of the Court; that they were sworn before entering upon the discharge of their duties; that they viewed in person the land sought to be condemned; that, at times and places of which the several parties in interest had notice, they heard the allegations and proofs of the parties, and to that end issued subpœnas for all witnesses which the parties or any of them desired to call. The report should also contain minutes of the testimony and the rulings of the Commissioners upon all points made by counsel or parties as to the admission or rejection of testimony; and, generally, all matters which are necessary to show the rules or principles by which the Commissioners were governed in making their appraisal.

We give the foregoing merely as an outline of what the report should contain, and not by any means as a perfect epitome. We give it for the purpose of showing what we understand to be the intent of the statute in requiring the

Commissioners to report "*their proceedings in the premises*" to the Court.   (Sec. 30.)

That the report should be of the character indicated is apparent from the special nature of the power which the Commissioners exercise, as well as from the provisions of the statute requiring it to be made, and the further provision, that it may be reviewed by the Court, unaccompanied as the latter provision is by any further provision expressly declaring upon what record or papers such review shall be had.   The review of the Court is intended to be founded upon the report of the Commissioners, so far as all matters which should be there stated are concerned, and not upon bills of exceptions or statements in the sense of the Practice Act in relation to new trials.   If the report does not show fully what the proceedings before the Commissioners were, it should be set aside for that reason, or sent back to the Commissioners for amendment.   The Court has the power to cause all pleadings and proceedings for which the statute provides to be amended (Sec. 33) ; and if the Commissioners do not make such a report as both the statute and the nature of their power demand, it is the duty of the Court to compel them to do so.   And if from any cause such a report cannot be obtained from them, that fact, of itself, is, in our judgment, " good cause " for setting aside the report in the sense of the statute.   (Sec. 31.)   When the report is thus made what, as we hold, the statute designs it should be, there will be, in a majority of cases, no occasion for going outside of the report itself upon a motion to set it aside.   If, however, " good cause " exists, which does not appear upon the face of a report, after it has been made to respond to all the calls of the statute, such as fraud or misconduct on the part of the Commissioners or others, by reason of which a fair, full, and honest investigation has not been had, such cause may be shown by affidavits or other competent evidence, or in any legal mode which the Court, in the exercise of its general supervision over cases of this character, may prescribe by its

rules or adopt for the occasion. (*New Jersey Railroad and Transportation Company* v. *Suydam*, 2 Harrison, N. J., 25.)

The Court below seems to have come to the conclusion that a motion to set aside the report and grant a new trial should be prosecuted, to some extent at least, in the manner provided in the Practice Act for the prosecution of motions for new trials in civil cases, and therefore disregarded the appellant's bill of exceptions, notwithstanding it was signed by all of the Commissioners, because it was not settled at the proper time. In this respect the Court was in error.

The matter set out in the bill of exceptions should have been included in the report, as we have seen. The mere fact that the bill of exceptions was not settled at the trial, was not, therefore, a sufficient reason for disregarding it. It was signed by the Commissioners, and should have been considered as a part of their report. Without it their report was manifestly imperfect, and had it not been brought in by the Commissioners voluntarily, the Court could have compelled them to amend their previous report by inserting the proceedings which were had at the trial, upon the application of any party who might have desired to base a motion for a new trial upon them in part or in whole. We shall, therefore, for the purpose of this appeal, consider, as the Court below should have done, the bill of exceptions—so called— as a part of the report of the Commissioners. The objections to the proceedings of the Commissioners are, that they received incompetent testimony, and acted upon it in ascertaining the amount of the compensation which was awarded to the respondents, and that they included in the award damages to which the respondents are not legally entitled.

It appears from the report that the Commissioners admitted as evidence, as to the value of the land, the opinions of witnesses who were unacquainted with the market value of lots in Sacramento. Also, that they allowed the respondents to prove that certain sums of money had been offered them by various parties for the land, or some portion thereof, for the purpose of showing its value. Also, evidence as to certain

supposed wharf privileges adjoining some of the land lying on the bank of the Sacramento River, for the purpose of enhancing its value. Also, evidence to show what it would cost the respondent Pearson to remove certain personal property which he had upon the land or a portion thereof. Also, evidence to show what loss he would sustain by the interruption of his business, which was being carried on upon a part of the land, in consequence of the taking of the land by the appellant. Also, that evidence of like character was admitted on behalf of Shaw, another of the respondents.

The Commissioners allowed Pearson and Shaw five hundred dollars each, as compensation for the interruption and loss of business, but the Court below struck out those items, and they are not, therefore, before us for review.

Under the statute providing for the condemnation of land for railroad purposes, the Commissioners are required to view the land, and to hear the allegations and proofs of the parties. In determining the amount of compensation, they are not, therefore, to be guided solely by the testimony of their own senses. They must give to the testimony of the witnesses its proper weight, and it must be presumed that they have done so. They are not at liberty to disregard it; on the contrary, they should accord to it all the weight to which it is intrinsically entitled, otherwise its taking would be a useless and idle ceremony. Its taking, therefore, must be governed by the same rules by which the admission and exclusion of evidence in other cases is regulated. The Commissioners should receive as testimony none but legal testimony. They cannot receive illegal testimony, or reject legal, without the same consequences which would follow like action on the part of a Court. For if they admit illegal testimony, it must be presumed that they believed it to be legal, and therefore founded their final judgment in part upon it.

The opinions of witnesses, founded upon a knowledge of the location, productiveness, or adaptation of the land to other uses, not speculative, or of the market or selling price of the land in the vicinity, are legal evidence to prove its

value. (*Searle* v. *Lackawanna and Bloomsburg Railroad Company*, 33 Penn. State, 57; *East Pennsylvania Railroad* v. *Hiester*, 40 Penn. State, 53.) But the opinions of witnesses who do not possess this knowledge are not. The opinions of such are worthless as a foundation for intelligent action, even in a matter of business. The business man who forms his judgment upon the opinions of others who have no knowledge of the subject of which they speak, would be obnoxious to the charge of great folly, if not lunacy; and opinions which cannot be accepted as worthy of any influence upon the action of men in the management of their business affairs, certainly ought not to be made the basis of judicial action.

But, while the opinions of witnesses thus qualified by their knowledge of the subject are competent testimony, they cannot, upon the direct examination, be allowed to testify as to particular transactions, such as sales of adjoining lands, how much has been offered and refused for adjoining lands of like quality and location, or for the land in question, or any part thereof, or how much the company have been compelled to pay in other and like cases—notwithstanding those transactions may constitute the source of their knowledge. If this was allowed, the other side would have a right to controvert each transaction instanced by the witnesses, and investigate its merits, which would lead to as many side issues as transactions, and render the investigation interminable. Upon cross examination, however, the knowledge of the witnesses, and, therefore, the value of their opinions, may be tested in that mode, if desired by the party in whose interest the examination is conducted. (Greenl. on Ev., Sec. 448.)

The testimony in relation to the value of wharf privileges on the shore of the Sacramento River, where the tide ebbs and flows, given for the purpose of enhancing the value of some of the land sought to be appropriated, was also improperly received, for the obvious reason that the party claiming the compensation had no wharf franchise. The mere fact that the party might at some future time obtain from the

State a grant of a wharf franchise if allowed to remain the owner of the land, is altogether too remote and speculative to be taken into consideration. The question for the Commissioners to ascertain and settle was the present value of the land in its then condition, and not what it would be worth if something more should be annexed to it at some future time: (*Gould* v. *The Hudson River Railroad Company*, 6 N. Y. 522.)

The item of seven hundred dollars allowed Pearson for the supposed cost of removing his personal property from the premises was improperly allowed by the Commissioners, and should have been stricken out by the Court below. In cases of this character the landowner is entitled only to such damages, over and above the value of the land sought to be appropriated, as the statute gives. Whether the statute gives only the cost of fencing, over and above the value of the land taken, as claimed by the appellant, it is unnecessary to decide for the purposes of this case. Upon that question the statute is by no means clear, but we are satisfied that it does not, in any event, allow compensation over and above the value of the land actually taken, the cost of fencing and cattle guards, and such damages as may accrue to that portion, if any, of the land of the landowner which is not taken, by reason of its severance from the part taken and the construction of the railroad in the manner proposed. The cost of removal from the premises is not included.

The motion of the appellant to set aside the report in respect to the lots designated in its notice should have been granted. The order denying it is, therefore, reversed, and the case remanded for further proceedings.