## UNITED STATES v. CERTAIN TRACTS OF LAND IN LOS ANGELES COUNTY, CAL., et al.

### No. 3128.

District Court, S. D. California, Central Division.

Oct. 13, 1944.

Eugene D. Williams, Sp. Asst. to Atty. Gen., and August Weymann, Sp. Atty. Lands Division, Department of Justice, of Los Angeles, Cal., and Joseph F. McPherson, Sp. Asst. to Atty. Gen., for plaintiff.

Maurice Norcop, of Los Angeles, Cal., representing Tracts 36, 54, and 59.

Joseph C. DuRoss, of Los Angeles, Cal., associated with Mr. Norcop as to Tract 54 only.

Meserve, Mumper & Hughes and Clifford E. Hughes, associated with Vincent Morgan, of Hill, Morgan & Bledsoe, all of Los Angeles, as to Tract 60 only.

J. F. T. O'CONNOR, District Judge.

This is a condemnation proceeding instituted by the United States. At a pretrial hearing in the above entitled matter, the Government contended that direct testimony of comparable sales is admissible in the Federal Court sitting in California. The Government admits that comparable sales by direct testimony are inadmissible in the State Courts in California on direct examination, and cannot be considered by the jury as evidence of the market value of the condemned real property. The defendants, owners of the property condemned by the Government, insist that the Federal Courts sitting in California are bound by the State law.

It has been the practice of this Court to follow the California rule now challenged for the first time. Heretofore, both the Government and the owners of condemned land have acquiesced in and followed the California law. A ruling is now requested, and the issue must be met.

■ The rule in California is stated in Thompson v. Stoakes, 1941, 46 Cal.App. 2d 285, 115 P.2d 830, 834, where the Court said:

" * * * whatever the rule may be in other states, the rule is well settled in this state that on direct examination of witnesses called to testify as to value, they cannot be permitted to testify as to particular transactions, such as sales of similar or the same property. * * *"

This rule is supported by several California cases: Atchison, T. & S. F. Ry. Co. v. Southern Pacific Co., 1936, 13 Cal.App. 2d 505, 57 P.2d 575, 578; Reclamation Dist. No. 730 v. Inglin, 1916, 31 Cal.App. 495, 160 P. 1098, 1100, 1101; In re Ross' Estate, 1915, 171 Cal. 64, 151 P. 1138, 1139.

The California rule is fully stated in City of Los Angeles v. Deacon, 119 Cal. App. 491, 7 P.2d 378, as follows:

"But conceding that all these facts would be taken into consideration by one endeavoring to determine the market value of a piece of property, it is nevertheless the settled law of this state that none of them may be proven for the purpose of establishing the market value. The procedure which is recognized as proper is, for the witness, when found to be qualified to give an opinion as an expert, to state, first, what is, in his judgment, the market value of the property. De Freitas v. Town of Suisun City, 1915, 170 Cal. 263, 149 P. 553, 555. On this, the examination in chief, it may not be shown: For what sum the property was assessed (San Jose, etc., R. Co. v. Mayne, 1890, 83 Cal. 566, 23 P. 522; Yolo Water, etc., Co. v. Edmands, 1920, 50 Cal.App. 444, 195 P. 463; McNulty v. Lawley, 1919, 42 Cal.App. 747, 184 P. 50); nor the value placed upon it by the appraisers in a probate proceeding (see Central Pacific R. Co. v. Feldman, 1907, 152 Cal. 303, 92 P. 849); nor the price offered for the property being condemned (Central Pac. R. Co. v. Pearson, 1868, 35 Cal. 247; City of Santa Ana v. Harlin, 1893, 99 Cal. 538, 34 P. 224; Merchants' Trust Co. v. Hopkins, 1930, 103 Cal. App. 473, 284 P. 1072); nor yet that offered or paid for lands in the neighborhood (Spring Valley Waterworks v. Drinkhouse, 1891, 92 Cal. 528, 28 P. 681; City of San Luis Obispo Brizzolara, 1893, 100 Cal. 434, 34 P. 1083; Estate of Ross, 1915, 171 Cal. 64, 151 P. 1138; City of Los Angeles v. Hughes, 1927, 202 Cal. 731, 262 P. 737; Reclamation Dist. No. 730 v. Inglin, 1916, 31 Cal.App. 495, 160 P. 1098; Palladine v. Imperial Valley F. L. Ass'n, 1924, 65 Cal.App. 727, 225 P. 291; Dickey v. Dunn, 1927, 80 Cal.App. 724, 252 P. 770; Fishel v. F. M. Ball & Co., Inc., 1927, 83 Cal.App. 128, 256 P. 493; Merchants' Trust Co. v. Hopkins, supra; and see leading case of Central Pac. R. Co. v. Pearson, supra). 'He should not be asked regarding specific facts in the examination in chief.' De Freitas v. Town of Suisun City, supra. On cross-examination however, questions may be asked about these various matters: Assessment and probate appraisals, Central Pacific R. Co. v. Feldman, supra; prices offered and paid for other properties, East Bay Mun. Utility Dist. v. Kieffer, 1929, 99 Cal.App. 240, 278 P. 476, 279 P. 178; and see Central Pac. R. Co. v. Pearson, supra; Spring Valley Waterworks v. Drinkhouse, supra; City of Santa Ana v. Harlin, supra; Estate of Ross, supra, and Reclamation Dist. No. 730 v. Inglin, 1916, 31 Cal.App. 495, 160 P. 1098. When evidence of sales, etc., is received on cross-examination, however, it is solely for the purpose of testing the value of the witnesses' testimony; it is not in itself evidence of value of the property. City of San Luis Obispo v. Brizzolara, 1893, 100 Cal. 434, 34 P. 1083; Palladine v. Imperial Valley F. L. Ass'n, 1924, 65 Cal.App. 727, 225 P. 291. Nor is the rule any different on redirect examination than it is on the opening examination in chief, even though some specific sales may have been gone into during the cross-examination."

Only three other states of the Union hold to the view expressed by the California courts. They are Pennsylvania, New York, and Minnesota.

■ Are the Federal courts functioning within the State of California bound by the rule adopted by the highest courts of the State, as it applies to direct evidence of comparable sales on direct examination as competent evidence to establish value? Recent federal decisions hold to the contrary. United States v. Certain Parcels of Land and Wainright, 144 F.2d 626, 627, decided by the Third Circuit Court of Appeals, on August 16, 1944, is directly in point. The landowner sought to introduce, upon the question of value, a written contract for the sale of property in Pennsylvania, which was being condemned. The trial court excluded the contract as inadmissible under Pennsylvania State law. The Circuit Court reversed the District

Court, holding that the contract was admissible. The Court said:

"This appeal raises a single question. In a case to determine the value of property taken by the United States under the power of eminent domain, is a written contract for the sale of the identical property executed shortly before the taking admissible in evidence as bearing on the market value of the property? The trial court refused to receive into evidence such a contract offered by appellant-owner. * * * A careful consideration of the Pennsylvania authorities leads to the conclusion that such evidence is inadmissible under Pennsylvania law. While it is probably true that there is no Pennsylvania decision which squarely covers the present case, the results and reasoning of the most analogous cases are clearly hostile to the admission of evidence of the sale price of land taken by eminent domain. It has long been settled in Pennsylvania that evidence of the sale price of lands similar to the parcel condemned is inadmissible. Henkel v. Wabash Pittsburg Terminal R. R. Co., 213 Pa. 485, 62 A. 1085; Schonhardt v. Pennsylvania R. R. Co., 216 Pa. 224, 65 A. 543; Pennsylvania Co. for Insurances on Lives, etc., v. Philadelphia, 268 Pa. 559, 112 A. 76. The principal reason upon which this rule is based is significant because it is broad enough to be equally applicable to evidence of sales of the very property condemned. This reason is that 'market value' in this type of case in Pennsylvania depends on the 'judgment of the community' rather than that of a particular buyer and seller. In the early case of East Pennsylvania Railroad v. Hiester, 40 Pa. 53, the Supreme Court of Pennsylvania, after pointing out that one objection to the admissibility of evidence of the sale price of similar land was the introduction of numerous collateral issues, continued at page 55 of 40 Pa.: 'But even this is not the most serious objection. Such testimony does not disclose the public and general estimate which, in such cases, we have seen is a test of value. It would be as liable to be the result of fancy, caprice, or folly, as of sound judgment, in regard to the intrinsic worth of the subject-matter of it; and, consequently, would prove nothing on the point to be investigated. The fact as to what one man may have sold or received for his property, is certainly a collateral fact to an issue, involving what another should receive, and, if in no way connected with it, proves nothing. It is, therefore, irrelevant, improper, and dangerous. Not so with a market value. That is a recognized fair test. It holds good, let the demand and supply be as they may, and is equally reliable, whatever may be the relative value of money and property, or the circumstances of the country. It is supposed to represent the judgment of the community, and approximately fixes the value of a given article or thing, as it may do the character of a person.'

"Similarly, in Schonhardt v. Pennsylvania R. R. Co., 216 Pa. 224, at page 228, 65 A. 543, 544, the Supreme Court of Pennsylvania said: 'The proper test of value when the whole property is taken is the market price, and this is to be shown, not by proof of particular sales, but by the general selling price.' "

See also: Friday v. Pennsylvania R. Co., 204 Pa. 405, 54 A. 339.

" * * * And if market value, as construed in condemnation proceedings by the United States, is 'what a willing buyer would pay in cash to a willing seller,' evidence of what the property sold for in a bona fide sale is most significant. * * * We are, therefore, of the opinion that the evidence of the terms of the contract of sale for the property condemned in the present case should have been received in evidence. It is evidence to be considered in arriving at just compensation, affecting the appellant's substantive right, and its relevancy is therefore a federal question to be determined unfettered by any local rule."

The Court considered the possibility of fraud and collusion where a landowner might conspire to defraud the Government by manufacturing evidence. This was not held controlling for the reasons given in the opinion, as not sufficient to exclude the unperformed contract. The case was tried on the theory that the Pennsylvania law was controlling. The Court said:

"Appellate courts of course have always remanded cases when the trial courts have applied the law of the wrong jurisdiction. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. We think this should be done in this case and it is immaterial that it was tried in the district court on the theory that Pennsylvania law was to be applied. The appropriate law must be applied in each case and upon a failure to do so appellate courts should remand the cause to the trial court

to afford it opportunity to apply the appropriate law, even if the question was not raised in the court below. Pecheur Lozenge Co., Inc., v. National Candy Co., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103."

The Court held that the contract should have been admitted simply as evidence of market value and not as "establishing a fair market value." "We agree that the contract of sale would not have been controlling on the question of market value but would have been merely evidence thereof. Cf. Olson v. United States, 292 U.S. 246, at page 255, 54 S.Ct. 704, at page 708, 78 L.Ed. 1236 [and cases cited]."

Another recent case is Westchester County Park Commission and the County of Westchester v. United States, 2 Cir., 143 F.2d 688, 694. The Government was permitted, upon direct examination, to introduce evidence of comparable sales. The landowner predicated error upon admission of this testimony as at variance with the New York State Law. The Court, in affirming the judgment, said:

" * * * The government suggests that the Robinson doctrine no longer prevails in New York. We shall, however, assume that it does. Even so, it is inapplicable here. For we have held that, under the Conformity Act, 28 U.S.C.A. § 724, the wording of which is substantially the same as 40 U.S.C.A. § 258, state rules of evidence do not bind the federal courts, when to follow those rules would 'unwisely incumber the administration of the law.' "

In Northern Pac. Ry. Co. v. North American Tel. Co., 8 Cir., 1915, 230 F. 347, 350, L.R.A.1916E, 572, a telegraph company sought to condemn the surplus use of a railroad right-of-way for its telegraph line. The telegraph company offered to prove the value of comparable rights which the trial court excluded. The court, in speaking of the character of the testimony excluded, said:

"At the trial below, Mr. Clapp testified * * * that there was no going price or market value for permanent rights to the surplus use of the right of way of the railway company for a telegraph or telephone line, but that there were permits in existence for at least 68 telegraph or telephone lines on parts of the right of way of the Northern Pacific Company, and that he thought he could tell the value of the leasehold right to put a telegraphic pole line similar to that sought by the telegraph company on the right of way of the rail-

way company; but the court refused to permit him to answer the question, 'State the market value of such right of way,' and sustained objections to offers made by counsel *for the railway company to prove the market value of a right of way similar to that sought to be taken in this case and to offer to prove what other parties were paying for such rights of way in the market generally. * * *"* (Italics mine)

The Court reversed the judgment for exclusion of the evidence and remanded the cause for a new trial.

In North American Telegraph Co. v. Northern Pac. Ry. Co., 8 Cir., 1918, 254 F. 417, 418, certiorari denied 1919, 249 U.S. 607, 39 S.Ct. 290, 63 L.Ed. 799, upon a subsequent appeal of the same case, the railway company had been permitted by the trial court to prove the market value of other similar individual transactions. The telegraph company complained that such proof was inadmissible. The court affirming the judgment said:

" * * * To prove market value when it is used in this secondary or figurative sense, it is proper to receive evidence of individual transactions, even offers made in good faith for property of like character, the nature of the property, its location, its rental value, the uses to which it can be put, and all the manifold elements which are admissible to show the fair and reasonable value of property which is not so traded in as to give it a market value in the primary sense of the term. * * *"

In Miller v. United States, 9 Cir., 1942, 125 F.2d 75, a California case, the Circuit Court held that comparable sales were admissible. Pages 78-80, 81 of 125 F.2d. In reversing the cause upon other grounds, United States v. Miller, 1943, 317 U.S. 369, 63 S.Ct. 276, 283, 87 L.Ed. 336, 147 A.L.R. 55, the Court said, respecting another local rule of evidence:

"The respondents also say that, whatever the criterion of value adopted by the federal courts, Congress has adopted the local rule followed in the state where the federal court sits; and they claim that the California rule is settled that fair market value at the date of taking is the standard of value, without elimination of any increment attributable to the action of the taker. We need not determine what is the local law, for the federal statutes upon which reliance is placed require only that, in condemnation proceedings, a federal court shall adopt the forms and methods of pro-

cedure afforded by the law of the State in which the court sits. They do not, and could not, affect questions of substantive right,—such as the measure of compensation,—grounded upon the Constitution of the United States. Chappell v. United States, 160 U.S. 499, 512, 513, 16 S.Ct. 397, 40 L.Ed. 510; Brown v. United States, 263 U.S. 78, 86, 44 S.Ct. 92, 95, 68 L.Ed. 171.

"The respondents urge, further, that the reversal by the Circuit Court of Appeals is justified by the District Court's disregard of the practice of the California courts with respect to the production of opinion evidence as to market value, even though it was right as to the elements which must be excluded. They allege that, in California courts, an opinion witness must state his valuation as at the date of taking and the opposing party is at liberty, upon cross examination, to elicit the facts on which the witness relied in arriving at that value. Counsel insist that if the Government was entitled to have the witnesses disregard any increment of value due to the Government's intention to construct the project it could have developed, on cross examination, how far the inclusion of any such element had affected the value stated. We think that probably under California procedure this would have been the better and more appropriate way to develop the basis of the witnesses' opinions. We do not feel, however, that if there was a disregard of the local practice in this aspect the error is substantial or worked injury to the respondents."

In De Soto Motor Corporation v. Stewart, 10 Cir., 1933, 62 F.2d 914, 917, the Circuit Court considered the effect of the Conformity Act, 28 U.S.C.A. § 724, as affecting general evidentiary rules and said:

"The competency of witnesses, by federal statute, is to be determined by the laws of the state, in which the court is held, 28 U.S.C.A. § 631; under the Conformity Act (28 U.S.C.A. § 724), state statutes prescribing rules of evidence, and decisions construing them, are followed by the federal courts; but as to general evidentiary rules, state decisions are not binding on the federal courts when opposed to rules settled by controlling decisions of the United States courts." See cases cited.

In Chicago & N. W. Ry. Co. v. Kendall, 8 Cir., 1909, 167 F. 62, 64 (cited and referred to in De Soto Motor Corporation v. Stewart, supra), the Circuit Court held

that local decisions on questions of evidence are not binding upon Federal Courts but that the applicable decisions of the Federal Appellate Courts should be the rule of decision notwithstanding contrary rulings in the State Courts. The Court said:

"Defendant now contends * * * (2) that the question involved relates to a matter of evidence, and that as to such matters the decisions of the highest court of the state in which the action is tried constitute 'laws' within the meaning of section 721 of the Revised Statutes of the United States * * * and are therefore binding upon the federal courts. * * *

"Such a rule, if obligatory on the federal court, must come in under section 914 commonly known as the 'Conformity Act.' But under that section decisions of state courts, unless made in construing local statutes, have never been regarded as controlling in the national courts. Even local statutes on the subject of procedure have been rejected by those courts whenever in their judgment such statutes would unwisely incumber the administration of justice. * * *

"But perhaps the best way to ascertain whether state decisions on the subject of evidence are binding upon federal courts is to consider how the Supreme Court and federal Courts of Appeal have dealt with questions of evidence when directly presented for decision. Have they, as in the case of statutes and rules of property, looked to the decisions of the state in which the action arose as laws of controlling authority? * * * *"

Other cases holding the federal courts are not bound by the rules of the state courts in admitting evidence are: Bates v. Preble, 151 U.S. 149, 14 S.Ct. 277, 38 L.Ed. 106; Chicago Lumbering Co. v. Hewitt, 6 Cir., 64 F. 314, 12 C.C.A. 129; Raynor v. Norton, 31 Mich. 210; Misner v. Darling, 44 Mich. 438, 439, 7 N.W. 77; Mason v. Phelps, 48 Mich. 126, 11 N.W. 413, 837; Adams v. New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575.

*Incidental damages is a matter of substantive law.*

"The Tennessee statute providing that, in estimating damages in condemning lands, the jury shall give value of land without deduction but incidental benefits which may result to the owner may be considered in estimating incidental damages, is a matter of 'substantive law', and

therefore inapplicable under the conformity act, if the statute requires the United States to give the owner something in addition to the compensation provided by Fifth Amendment to the Federal Constitution. United States ex rel. Tennessee Valley Authority v. Indian Creek Marble Co., D.C. Tenn., 40 F.Supp. 811." 35 C.J.S., Federal Courts, § 113, et seq. page 976.

The owner of condemned land may demand federal court not adopt state procedure which is less favorable to him than federal procedure.

"Under federal statute providing that condemnation proceedings by the United States shall conform, as nearly as may be, to the procedure in the state courts 'in like causes,' the procedure to be followed is that established by state statute in condemnation proceedings generally, and a federal court is not authorized to adopt a procedure specially provided by a state statute for proceedings by the United States, which is less favorable to the property owner, over his timely objection. United States v. Chichester, D.C.Va., 283 F. 650." 35 C.J.S., Federal Courts, § 113, p. 976. See also 35 C.J.S., Federal Courts, § 117, p. 977, and § 99, p. 968, for discussions of the Practice Conformity Act as modified by the Rules of Civil Procedure for District Courts. See also cases cited in Cum.Ann. Pocket Part, 1944, C.J.S. Vol. 35.

Circuit Judge Garrecht, speaking for the court in Re City of Oakland v. United States, 9 Cir., 124 F.2d 959, 964, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L. Ed. 1753, made reference to the extent compliance with state statutes was required in condemnation cases:

"Moreover, the requirement of the statute that the proceedings provided for are to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherever the proceedings may be instituted is not to be so construed as to defeat the purpose of the act. Forbes v. United States, 5 Cir., 268 F. 273, 276; Luxton v. North River Bridge Co., 147 U.S. 337, 13 S.Ct. 356, 37 L.Ed. 194."

It is clear that in Minnesota, Pennsylvania, and New York, the three states where the rulings on the question of the admissibility of direct testimony of comparable sales on direct examination, as evidence of market value, hold that such evidence is not admissible, the federal courts have declined to follow the state rule. In all of the other states where the federal courts have jurisdiction, the rule contended for by the Government in the instant case has been followed and there is no decision of a federal court to the contrary. It would seem, therefore, that the overwhelming weight of authority is that evidence of comparable sales on direct examination as evidence of the fair market value of property, is admissible. The defendants contend that to ignore the local law would "lead to endless confusion." The Court believes the contrary to be true. A Federal District Judge, while appointed to act in a certain designated district, is nevertheless a United States Judge with full authority to act wherever designated in any state or territory of the United States. It will make for greater uniformity and less confusion if one rule applies and that rule a Federal rule, rather than to follow diverse rules in the various jurisdictions. Again, where the compensation is to be paid by the Federal Government, that Government should determine how far it will follow local law.

For full discussion of testimony on value, real property, see 32 Corpus Juris Secundum, Evidence, § 545d, page 295.

The Court will give the following instruction to the jury, and allow an exception to all of the defendants:

The sales admitted in evidence should be considered by the jury insofar as such sales, looking at the circumstances, in each instance, may evidence or throw light upon the fair market value of the land being condemned, unaffected by the Government's acquisition thereof for public purposes.