[Sac. No. 2156.    Department One.—May 28, 1915.]

JOSEPH L. DE FREITAS, and MARIANNA DE FREI-
TAS, Respondents, v. TOWN OF SUISUN CITY (a
Municipal Corporation), Appellant.

WATER—DIVERSION OF UNDERGROUND FLOW SUPPLYING SPRINGS—MEAS-
URE OF DAMAGES.—In an action to recover damages for the diver-
sion of underground water supplying springs on the land of the
plaintiffs, thereby causing the springs to become dry and depriving
plaintiffs of water belonging to their land, the measure of damages
is the difference between the value of the land before the diversion
and its value if it were permanently deprived of the water so
diverted.

ID.—EVIDENCE OF DAMAGE—HYPOTHETICAL QUESTIONS BASED SOLELY
ON GROSS REVENUE.—Hypothetical questions, based solely upon the
element of the gross revenue derivable from the land when supplied
with or deprived of water, are inadmissible to show the value of the
land in such respective conditions or the damage caused by the diver-
sion.

ID.—OPINION EVIDENCE AS TO VALUE—QUALIFICATIONS OF WITNESS.—
Such values and damage may be shown by the opinion evidence
of a competent witness as to its respective values with and without
the use of the water in question, after the witness has first estab-
lished his qualifications by showing, for example, that he has seen
and examined the land, or that he knows something of its character
and condition, or the market values of land in that vicinity, if
such values have been established, or the values of land similarly
situated, and the like.

APPEAL from a judgment of the Superior Court of
Solano County and from an order refusing a new trial.    A. J.
Buckles, Judge.

The facts are stated in the opinion of the court.

T. T. C. Gregory, C. J. Goodell, and Theodore W. Chester,
for Appellant.

Frank L. Coombs, and E. S. Bell, for Respondents.

SHAW, J.—The defendant appeals from the judgment and
also from an order denying its motion for a new trial.

The complaint alleges that plaintiff Joseph de Freitas is
the owner in fee of fifty acres of land in which Marianna

de Freitas has a life interest; that Joseph is in possession under lease from Marianna; that the defendant is the owner of an adjoining tract of land containing one hundred and seventy-one acres; that upon the plaintiffs' land there were springs the waters of which, for more than thirty years past, plaintiffs have used to irrigate their said land; that in the year 1908 the defendant dug a tunnel on its land near the plaintiffs' line for the purpose of obtaining water therefrom; that by said tunnel it diverted the underground water supplying plaintiffs' springs and caused the same to become dry, thereby depriving plaintiffs of water belonging to their land, to their damage in the sum of ten thousand dollars. The defendant answered, denying the allegations of the complaint. There was a trial by jury resulting in a verdict in favor of "the plaintiff" in the sum of four thousand dollars. The court thereupon entered judgment in favor of Joseph L. de Freitas against the defendant for said sum.

It is claimed that the evidence does not sustain the allegation that the tunnel dug by the defendant intercepted the water sources supplying the plaintiffs' springs. The evidence on this point is not satisfactory, but we cannot say that it is insufficient to warrant the conclusion that the defendant's tunnel intercepted the flow to plaintiffs' springs and diverted the water thereof from plaintiffs' land. We cannot disturb the verdict on that account.

We think the court below erred in overruling defendant's objections to hypothetical questions put to the witness Gordon regarding the value of the land in question and the damages sought by the plaintiffs and in refusing to strike out his answers. The measure of damages caused by the diversion of water from plaintiffs' springs would be the difference between the value of plaintiffs' land before the diversion complained of and its value if it were permanently deprived of the water so diverted. The witness Gordon was produced to give evidence upon this subject. He stated that he was a farmer and fruit grower and that he had seen the plaintiffs' land a few days before the trial but had not examined it with any view to estimating its value; that he owned some land and was acquainted with land values in the vicinity and with the market values of the class of land such as that of the plaintiffs. Thereupon the plaintiffs' counsel put to him a hypothetical question, in substance as follows: "Conceding

that the town of Suisun dug the tunnel and struck the main flow of water at the end of the tunnel about the 8th of September, 1908; that prior to that date there were springs on plaintiffs' land the waters of which the plaintiff had used to irrigate a part of the land; that by reason of such irrigation, Mr. Freitas could and did cultivate strawberries, blackberries, raspberries, and vegetables on that part of said land; that Mr. Frietas took off and received therefrom a gross income of $1200 a year, average, and from the unirrigated portions thereof a gross average income of $600, and taking into consideration that this was outside of the question of having a living from the place, using what was there. Now, under these circumstances, what would have been, in your estimation, the value of that whole piece of property, the 50 acres, giving the value of the irrigated and the unirrigated ground separately?''

To this the witness answered: ''Well, from grounds that produced a gross income of $1200 a year I should say from eight to ten thousand dollars; the balance producing a gross income of $600 I should say it would be worth from four to five thousand dollars.''

The witness was then asked what the damage would be to the land if the town tunnel had dried up the springs formerly supplying Freitas's land and permanently deprived it of the use of all that water for irrigating purposes, whereby the gross annual income of that irrigated land had been reduced to two hundred dollars.

The witness answered that the loss would be from six to eight thousand dollars. On cross-examination the witness stated that he based his estimates of value on gross income, deducting one-half for expenses of production and allowing six per centum interest on the investment. In other words, he capitalized the gross income of one thousand two hundred dollars less one-half for expenditures. He also testified that he knew nothing of the actual yield of the land or of the expense of growing, harvesting, and marketing the crops produced from it. The defendant moved to strike out all the testimony of Gordon as to the value and damage on the ground that he was not qualified to speak as an expert on the value of the Freitas place. The motion was denied.

The facts stated in the question gave no proper basis for an estimate of value. Gross income does not determine value. It might be all used up in expenses, in which case, upon the

theory proposed, the land would be worthless, although its actual market value might be considerable. The witness had no knowledge of the expenses of production. His allowance of one-half was purely arbitrary and there was no evidence to sustain it. Other evidence produced in defense tended to show that such expense was far more than one-half of the gross receipts. Moreover, if it were the law that the value is to be ascertained by the mere capitalization of the net revenue, the evidence should be confined to proof of facts showing the net revenue. That being ascertained, the value would not be a question for an expert, but a mere question of mathematics, a calculation which the court should make or direct the jury to make. The truth is the amount of actual net revenue does not determine the value of land in every case. The revenue would vary according to the industry, skill, and wisdom of the person cultivating the land. Its net revenue, assuming reasonable skill in cultivation and management, would be the criterion, so far as that element alone is concerned. But other elements, such as the state of the market, the demand and supply of land of the character in question, the prospects of advance, and perhaps other things, would ordinarily affect the question of value and fix it at a sum different from that produced by capitalization of net revenue. The actual market value is the thing to be determined and while net revenue should be considered, it does not, in general, furnish a conclusive measure of such market value. In the present case, however, the questions, both as to value and damage, were framed upon the erroneous theory that value may be determined from gross revenue alone, and neither of them should have been allowed.

It should not be difficult to prove value and damage in a legal manner by competent witnesses. By preliminary questions the examiner should elicit the facts relating to the qualifications of the witnesses, for example, that he has seen and examined the land, or that he knows something of its character and condition, or the market values of land in that vicinity, if such values have been established, or the values of land similarly situated, and the like. He may, thereupon, be asked to give his opinion of its respective values with and without the use of the water in question. From such evidence the court or jury can estimate the amount of damage caused by the deprivation of the water, if they shall find that there is

such and that it is produced by defendant's tunnel. The weight of the testimony of such witness will, of course, depend upon the knowledge he shows in his answers to the preliminary questions and on cross-examination. He should not be asked regarding specific facts in the examination in chief. The rules controlling such examinations are well established. (See *Central Pac. R. Co.* v. *Pearson,* 35 Cal. 262; *Clark* v. *Willett,* 35 Cal. 544.)

One witness for plaintiff testified properly to the value of the land. Taking the evidence as a whole, however, it was not satisfactory on this subject and we cannot say that the erroneous admission of this evidence did not affect the minds of the jury in their deliberations. On the contrary, we believe that it probably did influence them. Under these circumstances the court cannot say that the error was without prejudice.

The judgment and order are reversed.

Sloss, J., and Angellotti, C. J., concurred.