[Civ. No. 1542.    Third Appellate District.—September 20, 1916.]

## RECLAMATION DISTRICT No. 730, Respondent, v. M. INGLIN, Appellant.

CONDEMNATION OF LAND FOR LEVEE—EVIDENCE—OPINION OF VALUE—OTHER SALES—IMPROPER REDIRECT EXAMINATION.—In an action in eminent domain brought by a reclamation district, to condemn a strip of land as a part of a right of way for a levee, it is error to permit the plaintiff upon redirect examination of one of its trustees, who had on direct examination given his opinion as to the market value of the strip, to state that he based his opinion upon what other lands in the district of a similar character as to quality had been sold for to the district, although the defendant

on cross-examination brought out the fact of other sales and the prices at which they were made, but such error is without prejudice, where it is obvious from the verdict that the jury did not accept the testimony of the witness as to value.

ID.—OTHER SALES AND PRICES OBTAINED—PROPER CROSS-EXAMINATION —LIMITED PURPOSE.—In such an action it is proper to bring out on the cross-examination of a witness as to value the fact of other sales in the district and the prices at which they were made, for the purpose of testing the witness' knowledge and impeaching his opinion, but not for the purpose of fixing the value of the strip in suit.

ID.—VALUE OF LAND—RIGHT OF OWNER.—The owner of land sought to be condemned is entitled to its actual market value for the most valuable use or uses to which it is adapted or may be put, and the prices at which other lands of like quality and adaptation and similarly situated may have been sold cannot reasonably be accepted as a just criterion for measuring, and finally ascertaining. the actual value of the land sought to be taken.

APPEAL from a judgment of the Superior Court of Yolo County.  N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

Hudson Grant, and George Clark, for Appellant.

Arthur C. Huston, and Harry L. Huston, for Respondent.

HART, J.—This action is in eminent domain, and the appeal is by the defendant from the judgment in condemnation entered upon the jury's verdict.

The plaintiff is a reclamation district, entirely situated in Yolo County, organized as such under the laws of this state, the object for which it was organized being, as its name naturally implies, "to reclaim from overflow, flood, and seepage waters all the lands lying within the boundaries of said district."

The defendant is the owner of a tract of land situated within the boundaries of said district, and it is alleged in the complaint that a certain specifically described strip of said land, consisting of 9.8 acres, is necessary as a "right of way . . . to excavate, build, construct, repair and maintain canals, drains, levees, embankments, and other works necessary for the reclamation of the lands in said district, and also to ob-

tain material for the construction, maintenance, and repair thereof, and for the purpose of reclaiming the lands within said district from overflow and seepage waters.'' The strip of land sought to be taken by this action and which was by the verdict and the judgment condemned for the purposes above indicated constitutes a portion of the entire tract of land, situated in said district, owned by the defendant.

The answer alleges that upon the strip of land sought to be condemned are located the defendant's house, barn, and fences, and also a large, carefully constructed levee, and that all of said improvements ''are to be taken or damaged by said plaintiff''; that the value of the house, barn, and fences is the sum of $9,655.65, the value of the land itself is in excess of the sum of $3,430.00, and that the value of the said levee is the sum of $2,725.65. It is further alleged that the said house, barn, and fences cannot be used by defendant, if left upon said right of way, and that to make any convenient use of the same, upon the taking of said right of way and the construction of said proposed improvements, it will be necessary to move said buildings and fences from said land, and that the placing and setting of the buildings on new foundations and the rebuilding of said fences will be at an expense and to the damage of the defendant in the sum of one thousand dollars; that the total damages suffered by the defendant by reason of the taking of said right of way and the construction of said proposed improvements, exclusive of the damage that will be suffered by the land not taken, ''of which the part taken is a part, is the sum of $8,680.65''; that the damage which will accrue to the portion of the land not sought to be condemned will, by reason of the severance therefrom of the portion condemned and the construction of the improvements in the manner proposed by the plaintiff, amount to the sum of one thousand dollars.

The jury assessed and fixed the aggregate damages suffered by the defendant by reason of the taking of the strip of land at the sum of $2,862.95, the several items of said damages being found as follows:

Value of the land taken.....................$2422.95
Cost of removal and relocation of structures
   upon said land........................... 400.00
Cost of removal of hay from barn............. 40.00

31 Cal. App.—32

The jury found that no damage whatever will accrue to the land not condemned by reason of the severance therefrom of the strip taken.

The points urged by the defendant against the legal integrity of the judgment involve alleged errors of the trial court in permitting certain testimony to be given and in disallowing a certain instruction proposed by him and bearing upon the testimony referred to.

The witnesses for the defendant estimated the value of the land sought to be condemned, variously, at $400, $375, $350, $325, and $300 per acre. The plaintiff's witnesses expressed the opinion that it was worth no more than $50 per acre. One of the witnesses for the plaintiff testified that the particular strip involved here could be used, if it remained the property of the defendant, for the purposes of a levee only— that "it is useless for anything else."

The testimony to which objection was made by the defendant at the trial was that of W. S. Kendall, one of the trustees of the plaintiff.

On direct examination, he stated it to be his opinion that the market value of the strip of land involved in this action was $50 per acre. On cross-examination, he was asked whether he knew that several other tracts of land situated in said district belonging to other parties and which was adapted and had been devoted to the raising of alfalfa had been sold at prices ranging from $130 to $150 per acre in near proximity to the time at which the summons in this action was issued. His replies to the questions so propounded were that he had heard of such sales. On redirect, counsel for the plaintiff thus questioned the witness: "Mr. Huston: Explain to the jury why you placed the valuation of $50 an acre on this tract of land. Witness: Because it is what everybody in the district got." This answer was, on motion of the defendant, stricken out. Thereupon counsel for the plaintiff, naming six different owners of land in said district, asked the witness if he knew of the sales by said owners of their said lands, to which an affirmative reply was returned. "Mr. Huston: What did you hear was the sale price of these several tracts of land? Witness: Fifty dollars an acre." The witness then proceeded to say, on redirect, that the lands sold by the other parties named were in all respects similar in quality and in productive capacity to the land of the defendant and from

which the strip in question was proposed to be taken. All this testimony was duly and regularly objected to by the defendant, and the objections overruled.

On cross-examination, the witness was questioned: "Are you judging of the value of the Inglin lands by what these lands will produce? A. No, sir. Q. Are you endeavoring to fix the value on these lands simply by the standard of valuation which prevailed in the transfers to the district which were mentioned and enumerated by Mr. H. L. Huston in his questions to you? A. Yes."

Upon the conclusion of the witness' testimony, and before he left the witness-stand, counsel for the defendant moved to strike out all of said testimony on the ground that the basis of the witness' estimate of the value of the land in dispute was the prices at which other lands in the district had been sold, and that such prices do not constitute the legal criterion for estimating or determining value in a case of this character. The motion was denied.

Although the witness, we think, sufficiently qualified himself to give testimony upon the question of value by declaring that he had for many years been engaged in buying and selling real estate for himself and others, and that he had seen and was acquainted with the land in controversy, it is very clear that his testimony plainly and, indeed, conclusively showed that his opinion upon the value of the land in question was based entirely upon what other lands in said district of a similar character as to quality had been sold for to said district. The law provides that the owner is entitled to the actual value of the land sought to be condemned at the date of the issuance of summons in the action to condemn (Code Civ. Proc., sec. 1249), and the standard adopted by the witness is not the proper one for the estimation and (finally) the ascertainment of such value. The owner of the land is entitled to the actual market value of the land for the most valuable use or uses to which it is adapted or may be put, and the prices at which other lands of like quality and adaptation and similarly situated may have been sold cannot reasonably be accepted as a just criterion for measuring and, finally, ascertaining the actual value of the land sought to be taken. The reasons for this are obvious, and hardly need be stated, although, it may be suggested that, in looking for such reasons, it may readily be conceived how a person might, through

force of circumstances beyond his control, sell his land at a price far below its actual value, or how he might make such a sale through improvidence or for want of good judgment.

It is true that counsel for the defendant, in the cross-examination of Kendall, first brought out the fact of other sales of lands in the district and the prices at which they were made. As cross-examination, the questions and answers were proper, not, however, for the purpose of fixing the value of the land in dispute, but only "for the purpose of testing the witness' knowledge and impeaching his opinion." (*Estate of Ross,* 171 Cal. 64, 66, [151 Pac. 1138] ; see, also, *Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 247, 262; *Clark* v. *Willett,* 35 Cal. 534, 544; *Santa Ana* v. *Harlin,* 99 Cal. 538, 544, [34 Pac. 224] ; *Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 528, 532, [28 Pac. 681] ; *De Freitas* v. *Suisun City,* 170 Cal. 263, [149 Pac. 553].) But such cross-examination does not justify the plaintiff on redirect examination, which often amounts in practical effect to an examination in chief, to take up the question of sales of other lands and thus show by the witness the prices paid by purchasers of such other lands; for the reason of the rule permitting the fact of the sales of other lands to be gone into on cross-examination ceases with the cross-examination. While in all cases witnesses may, upon their examination in chief, give the reasons upon which they base their opinions, they should never be allowed to go into details of particular sales or transactions. (2 Lewis on Eminent Domain, 3d ed., sec. 654.) It follows, of course, that the court not only erred in allowing the question of sales of other lands and the prices paid for such lands to be gone into on the redirect examination of the witness, Kendall, but erred in refusing to grant the motion to strike out the testimony of said witness, it having been made clearly to appear from said testimony that the witness had based his opinion upon the question of value wholly upon incompetent matters. (*San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50, 63, [11 L. R. A. 604, 25 Pac. 977] ; *Pierson* v. *Boston Elevated Ry.,* 191 Mass. 223, 233, 234, [77 N. E. 769].)

But we think the errors thus considered were not prejudicial, for it is obvious from the verdict that the jury did not accept the testimony or opinion of the witness, Kendall, upon the question of the value of the property proposed to be taken. As seen, the strip to condemn which this action was brought

consisted of a fraction of over nine acres of the defendant's land, the total value of which, together with the improvements, the jury assessed at $2,422.95, or, approximately, if not precisely, at $265.52 per acre.

But it seems to be the theory of counsel for the defendant that but for the testimony of Kendall the jury might have found that the defendant suffered some damage from deterioration in the value of his land by reason of the severance therefrom of the strip in question. No such assumption is justified on the record as it is presented here. We have already stated that other witnesses testified that the land of the defendant was not damaged by reason of the severance of the strip in dispute therefrom. These same witnesses further testified that the land in question was of no greater value than $50 per acre. There is a mere brief recital in the transcript of the testimony of these witnesses, and the record before us does not disclose the basis of their estimate of the value of the land in controversy or the reasons, if any they gave, for the opinion that the actual value of said land does not exceed the sum of $50 per acre. We must therefore assume that the testimony of the witnesses referred to was in all respects competent, and that they adopted a proper criterion for estimating the value of the land. There is therefore a pronounced conflict in the evidence both upon the question of value and the question whether the remainder of the defendant's land would be damaged by reason of the severance therefrom of the strip in dispute.

Thus viewing the record as it appears before us, in so far as it concerns the evidence, it is plainly manifest that the jury were afforded a very wide latitude within which to exercise their judgment as to the actual value of the land sought to be taken, viz., from the sum of $50 to the sum of four hundred dollars per acre, and there is nothing appearing upon the face of the record which would warrant us in declaring that the actual value of the land was in excess of the amount at which it was fixed by the jury.

For the same reason for which we hold the errors in admitting the above-considered testimony to be without prejudice to the rights of the defendant, the action of the court in ·refusing to give a certain one of the instructions proffered by the defendant, while erroneous, was without prejudice. The substance of the said instruction was: "During the progress

of this case some reference has been made in the testimony and in the argument to prices paid to others than defendant for the land constituting a part of the right of way for the river-front levee of Reclamation District No. 730. You are instructed that the prices which may have been paid for rights of way to other persons for the levee along the river-front constitute no test for the fixing of the value of the defendant's lands in this cause. . . . And you will, accordingly, disregard, in determining the value of the defendant's land, any reference, either in the testimony or in the argument, to payments made to others for rights of way."·

As before declared, it is obvious that the jury were not governed, in the determination of the question of value, by the testimony of those witnesses who expressed the opinion that the value of the land in dispute did not exceed the sum of $50 per acre, although, as suggested, so far as the record here shows, they would have been justified in predicating their verdict upon the testimony so given other than that by the witness, Kendall. The total value fixed by the jury, however, as is obvious, was over five times the sum of $50 per acre, or, approximately, $34.40 less than three hundred dollars, the minimum amount at which the value of the land was estimated by the defendant's witnesses.

There was neither prejudice to the defendant nor a miscarriage of justice by reason of the errors complained of (Const., art. VI, sec. 4½; *Vallejo & N. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, [147 Pac. 238]), and the judgment is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.