[Civ. No. 1857.   Third Appellate District.—December 17, 1920.]

YOLO WATER AND POWER COMPANY (a Corporation), Appellant, v. WILLIAM O. EDMANDS et al., Respondents.

[1] EMINENT DOMAIN — LANDS BORDERING ON NAVIGABLE LAKE — PLEADING—AMENDMENT OF COMPLAINT—EXCLUSION OF LANDS BELOW HIGH-WATER MARK.—In an action by a public service corporation to condemn real property situated on the shores of a navigable lake, it is error to deny the plaintiff's motion to amend its description of the lands sought to be condemned, so as to

leave only the lands above high-water mark, thus waiving the right to condemn the lands below such mark, since section 1255a of the Code of Civil Procedure confers upon a plaintiff the right to abandon the proceeding at any time during the trial and even after judgment, although the defendants in their answer claim damages by way of compensation in the event that the prayer of the plaintiff be granted.

[2] PLEADING—AMENDMENTS—POLICY OF LAW.—While it is true that the allowance of an amendment to a pleading, when not of course, rests usually in the sound discretion of the trial court, and the appellate court will not interfere with the exercise of such discretion unless it has been abused, the policy of the law is to allow amendments with great liberality to the end that justice may be done.

[3] EVIDENCE—MARKET VALUE OF PROPERTY—VALUATION OF ASSESSOR. Valuation placed upon property by an assessor is not evidence of market value.

APPEAL from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge. Reversed.

The facts are stated in the opinion of the court.

Theodore A. Bell, Arthur C. Huston and W. P. Thomas for Appellant.

John S. Partridge, H. E. Witherspoon and Preston & Preston for Respondents.

PREWETT, P. J., *pro tem.*—Action in condemnation. This action was brought by the appellant, a public service corporation, against defendants and some 200 other persons to condemn certain real property situated on the shores of Clear Lake, in Lake County, in this state. The action was dismissed as to all save the above-named defendants, respondents herein. After a trial by jury a judgment was rendered by the superior court of the county of Mendocino, on the twenty-second day of October, 1917, condemning the lands sought by the appellant and fixing the damages at the gross sum of $105,600.

Clear Lake is a navigable body of water situated at a considerable elevation above the valley lands of Yolo County. Its only outlet is Cache Creek. This stream, after leaving the lake, finds its way down a narrow and rocky canyon

toward the valley and its waters finally reach the ocean. The drainage of the lake covers a territory embracing some 500 square miles, and its shore line is about 100 miles in length. The land along this shore line is owned by a large number of farmers, stated to be about 200 in number. On the north shore of an arm of the lake, called Robinson Lake, are located the properties of the defendants. The normal fluctuations of the waters of the lake are from zero on the Rumsey gauge to seven or eight feet above that mark, while the extreme fluctuations are nearly twice that figure. This action was commenced in April, 1912.

The appellant has heretofore constructed in Cache Creek an impounding dam of sufficient height to raise the waters of Clear Lake to the ten-foot mark on the Rumsey gauge.

This height is sufficient to result in the inundation of a large area of lowlands around the margin of the lake, which lands during a large part of the year are free from water. This renders necessary the condemnation of such of these marginal lands as are reduced to private ownership. It appears from the evidence in the case that respondent Harriet Lee Hammond claims about 15.40 acres of land below the zero mark; about 50 acres between the zero mark and the 7:56 mark and 7.04 acres between the 7:56 mark and the ten-foot mark. In the W. O. Edmands tract No. 1 there are about 164.61 acres between the zero mark and the 7:56 mark and about 10.47 acres between that mark and the ten-foot mark. In the W. O. Edmands tract No. 2 there are about 16.26 acres below the zero mark; about 41.81 acres between the zero mark and the 7:56 mark and about 4.16 acres between that mark and the ten-foot mark. In the Estate of C. M. Hammond tract there are about 25.43 acres below the zero mark, about 215.28 acres between the zero mark and the 7:56 mark and about 13.66 acres between that mark and the ten-foot mark.

These figures aggregate 57.09 acres below the zero mark; 472.65 acres between that mark and the alleged high-water level at 7:56. This leaves but 35.33 acres above the latter mark. The action was brought to condemn the whole, but the plaintiff now seeks an amendment waiving as to all below the high-water mark.

This would restrict the condemnation to the above-mentioned 35.33 acres. The real controversy in the case is

whether or not the plaintiff must be compelled against its wish to condemn and pay for the tract of 472.65 acres lying below high-water mark.

Before any jurors were sworn to try the case, the plaintiff asked leave to file an amended complaint, which differs in three particulars from the original complaint. First, it claims certain riparian rights, but as the court exercised its discretion later in the case and allowed, in substance, this portion of the amendment, the point requires no further notice at this time.

A second point is a claim of right to flood the lands up to the high-water mark, under the theory that these lands constitute in law a part of the bed of Clear Lake and as such are inalienable by the state by means of the swamp-land patents under which the defendants claim, and that, therefore, the defendants, having no title thereto, have no right to forbid the plaintiff from flooding them. The third point is a waiver by the plaintiff of all claim in this action to condemn any lands except the small tract of 35.33 acres lying above high-water mark. This waiver is based upon the assumption that the state owns all lands below the high-water mark in virtue of its sovereignty, as above set out (*Churchill* v. *Kingsbury*, 178 Cal. 554, [174 Pac. 329], and *Maginnis* v. *Hurlbutt*, 49 Cal. App. 460, [193 Pac. 606], and earlier cases), and on the further assumption that the state, holding the same in perpetuity in trust for the benefit of the people of the state, could not, at least under the swamp-land acts, convey any title, and that, therefore, the defendants have no title that could be condemned. It seeks by the amendment, in effect, to dismiss so much of its action as relates to these lands lying below high-water mark. The importance of this point is seen when it is recalled that the jury by its verdict awarded the very large sum of $105,600 as damages, and this, too, for lands which, in the year 1912 and every year since, have, in connection with 900 acres of other lands, making a total of about 1,400 acres, rented for the insignificant sum of $400 per annum. Less than 30 acres have been reduced to cultivation and the income derived from this cultivation is not included within the above rental. The motion for leave to amend was denied.

[1] Before offering any evidence, the plaintiff renewed its motion to amend, but in this last motion it asked only to amend its description of the lands sought to be condemned so as to leave only the above 35.33 acres, thus waiving the right to condemn in this action the tract of 472.65 acres. This motion, also, was denied.

Conceding, without deciding, that the action of the court in denying the first motion should be upheld on the ground that the plaintiff was seeking to raise conflicting claims to lands which in the same amendment it was excluding from condemnation, it is clear that the second motion to amend should have been allowed. [2] It is true that the allowance of an amendment, when not of course, rests usually in the sound discretion of the trial court, and this court will not interfere with the exercise of such discretion unless it has been abused. But the policy of the law is to allow amendments with great liberality, to the end "that exact justice may be done" and "complete justice may be reached."

This motion differs from the ordinary motion to amend in that the plaintiff, instead of trying to support a defective allegation, is really conceding to the defendants a part of their claim as set out in their answer. The answer denies the right of plaintiff to condemn and the necessity for the condemnation.

The plaintiff to the extent of this 472.65 acre tract is conceding this. The motion is, in substance, a dismissal as to a portion of the property in controversy. The defendants are in nowise injured by the dismissal, since they are prevailing in their contention to the extent of the dismissal.

But condemnation proceedings stand in a class by themselves. Section 1255a of the Code of Civil Procedure confers upon a plaintiff in condemnation the unconditional right to abandon the proceeding at any time during the trial and even after judgment. And before the enactment of this section it was held in *Pool* v. *Butler,* 141 Cal. 46, [74 Pac. 444]: "The proceeding in eminent domain is an exercise of the sovereign power of the state. . . . It is an adversary proceeding wherein 'the state appropriates the land for the use of the public. . . . But a plaintiff seeking to condemn land for a public use does not, by bringing the action to condemn, bind himself to take the land. . . . Hence the

plaintiff is conceded to have the right to abandon the proceeding and decline to take the land. . . . I think the plaintiffs had a right to abandon at any time before the defendants were willing to receive it or were in a position to demand it." From the foregoing many portions of the opinion not relevant to this case are omitted. The Pool case is mentioned with approval in *Lincoln Northern etc.* v. *Wiswell*, 8 Cal. App. 578, [97 Pac. 536], wherein the court adds: "In the proceeding under the statute to condemn there is no element of contract." The court in that case quotes from Lewis on Eminent Domain, section 656, as follows: "The weight of authority is that in the absence of statutory provision on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that, even after judgment or confirmation, the purpose of taking the property may be abandoned without incurring any liability to pay the awarded judgment."

It is true that the plaintiff in this case does not seek by amendment to abandon its entire claim, but the fact that it could at any time have done so, argues that it might, in the same manner, by amendment seasonably offered, abandon a portion thereof.

In *Crosby* v. *Clark*, 132 Cal. 1, [63 Pac. 1022] the court says: "Amendments to pleadings so as to enable the party to prove all the facts necessary to his cause of action or defense are favored. If, by reason of such amendment, the opposite party is taken by surprise, the cause can be continued or time allowed to meet the amendment or such other terms imposed as may be just under the circumstances. It can very rarely happen that a court would be justified in refusing leave to a party to amend his pleading so that he may properly present his case," and citing several cases in support thereof. In the above case the amendment was allowed after the completion of the trial.

Although the defendants set up in their answer their claim for damages by way of compensation for taking the lands sought to be condemned, such claim is not a cross-demand nor is it in the ordinary sense a claim for affirmative relief, since they ask such relief only in the event that the prayer of the plaintiff in condemnation be granted. In no sense is it such an independent demand for affirmative

relief as might be prosecuted to judgment either in this or any other action in the event that the plaintiff should be nonsuited. A dismissal of any portion of the demand of the plaintiff carries with it a corresponding portion of the claim of the defendants. With the reasons for the amendment by the plaintiff and the wisdom thereof, we are in no way concerned. We conclude that it had a right to waive a portion of its demand. Since this amendment eliminates the entire tract situated below high-water mark from the action so far as concerns its condemnation, it eliminates also the claim of the plaintiff that it has a right, as agent of the state, to flood this tract. Such claim is not a part of the condemnation proceeding and cannot be litigated therein. The court would have power, if the occasion demanded that course, to determine conflicting claims to the land sought to be condemned, but not to go beyond that point and adjudicate claims to other lands not sought to be condemned.

Other alleged errors do not require special notice. It may be added, however, that the court did not err in the then state of the pleadings in denying to the plaintiff the right to introduce in evidence the various title papers, although on a retrial of the case on the amendment these documents should be admitted. [3] The valuation placed upon the property by the assessor is not evidence of market value.

The judgment is reversed and the trial court is directed to permit the plaintiff to amend its complaint.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1921.

All the Justices concurred.