[Civ. No. 7460. Second Appellate District, Division One.—January 2, 1932.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. A. L. DEACON et al., Defendants; G. H. DEACON INVESTMENT CO. (a Corporation) et al., Respondents.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, Arthur W. Nordstrom and C. N. Perkins, Deputies City Attorney, for Appellant.

Oliver O. Clark, Rush M. Blodgett and Victor T. Watkins for Respondents.

BISHOP, J., *pro tem.*—The admission of evidence as to the net profit made in operating a rock and gravel plant on the property being condemned in this action, was error which, it is our opinion, requires a reversal of the judgment. Mr. Newberry, a witness for the defendants, and himself one of them because of his interest as a sublessee of the premises, testified in detail concerning the rich deposit of rock and sand on the property; outlined the commercial future of the rock business in southern California, stating the extent of the demand, the limits of the supply, and the economic advantages his plant possessed over others, and related much more along this line. Then, over timely objections and while still on direct examination, he was permitted to make a statement of his net profit at the plant during the year 1928, after paying rent to his lessor and rent to the owner.

The only legitimate object of all this testimony was to obtain an answer to the one question: What was the market value of the property being condemned, "that is to say, the highest price estimated in terms of money which the land

would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable''? (*Sacramento etc. R. Co.* v. *Heilbron,* (1909) 156 Cal. 408 [104 Pac. 979, 980].) In arriving at an answer to this question for himself, a person of ordinary business judgment would want to know the answer to a number of preliminary inquiries. It is just possible he would want to know at what figure the property was assessed by the county assessor. He might find it of interest to know what value was put upon it by the appraisers when it was recently involved in a probate proceeding. He certainly would be interested, if it was the market value he sought to determine, in any offers that had been made for the property, and in the price at which it and property similarly situated had recently been sold. He would, most likely, be interested in the amount of profit that had been made in the use to which the property had been put.

But conceding that all these facts would be taken into consideration by one endeavoring to determine the market value of a piece of property, it is, nevertheless, the settled law of this state that none of them may be proven for the purpose of establishing the market value. ■ The procedure which is recognized as proper, is for the witness, when found to be qualified to give an opinion as an expert, to state, first, what is, in his judgment, the market value of the property. (*De Freitas* v. *Town of Suisun City,* (1915) 170 Cal. 263 [149 Pac. 553, 555].) On this, the examination in chief, it may not be shown: For what sum the property was assessed (*San Jose etc. R. Co.* v. *Mayne,* (1890) 83 Cal. 566 [23 Pac. 522]; *Yolo Water etc. Co.* v. *Edmands,* (1920) 50 Cal. App. 444 [195 Pac. 463]; *McNulty* v. *Lawley,* (1919) 42 Cal. App. 747 [184 Pac. 50]); nor the value placed upon it by the appraisers in a probate proceeding (see *Central Pacific R. Co.* v. *Feldman,* (1907) 152 Cal. 303 [92 Pac. 849]); nor the price offered for the property being condemned (*Central Pac. R. Co.* v. *Pearson,* (1868) 35 Cal. 247; *City of Santa Ana* v. *Harlin,* (1893) 99 Cal. 538 [34 Pac. 224]; *Merchants Trust Co.* v. *Hopkins,* (1930) 103 Cal. App. 473 [284 Pac. 1072]); nor yet that offered or paid for lands in the neighborhood (*Spring Valley*

*Waterworks* v. *Drinkhouse,* (1891) 92 Cal. 528 [28 Pac. 681]; *City of San Luis Obispo* v. *Brizzolara,* (1893) 100 Cal. 434 [34 Pac. 1083]; *Estate of Ross,* (1915) 171 Cal. 64 [151 Pac. 1138]; *City of Los Angeles* v. *Hughes,* (1927) 202 Cal. 731 [262 Pac. 737]; *Reclamation Dist. No. 730* v. *Inglin,* (1916) 31 Cal. App. 495 [160 Pac. 1098]; *Palladine* v. *Imperial Valley F. L. Assn.,* (1924) 65 Cal. App. 727 [225 Pac. 291]; *Dickey* v. *Dunn,* (1927) 80 Cal. App. 724 [252 Pac. 770]; *Fishel* v. *F. M. Ball & Co., Inc.,* (1927) 83 Cal. App. 128 [256 Pac. 493]; *Merchants Trust Co.* v. *Hopkins, supra;* and see leading case of *Central Pac. R. Co.* v. *Pearson, supra.*) ''He should not be asked regarding specific facts in the examination in chief.'' (*De Freitas* v. *Town of Suisun City, supra.*) On cross-examination, however, questions may be asked about these various matters. (Assessment and probate appraisals—*Central Pacific R. Co.* v. *Feldman, supra;* prices offered and paid for other properties—*East Bay Mun. Utility Dist.* v. *Kieffer,* (1929) 99 Cal. App. 240 [278 Pac. 476, 279 Pac. 178]; and see *Central Pac. R. Co.* v. *Pearson, supra; Spring Valley Waterworks* v. *Drinkhouse, supra; City of Santa Ana* v. *Harlin, supra; Estate of Ross, supra,* and *Reclamation Dist. No. 730* v. *Inglin,* (1916) 31 Cal. App. 495 [160 Pac. 1098].) ▮ When evidence of sales, etc., is received on cross-examination, however, it is solely for the purpose of testing the value of the witnesses' testimony, it is not in itself evidence of value of the property. (*City of San Luis Obispo* v. *Brizzolara,* (1893) 100 Cal. 434 [34 Pac. 1083]; *Palladine* v. *Imperial Valley F. L. Assn.,* (1924) 65 Cal. App. 727 [225 Pac. 291].) Nor is the rule any different on redirect examination than it is on the opening examination in chief, even though some specific sales may have been gone into during the cross-examination. (*Reclamation Dist. No. 730* v. *Inglin, supra.*)

With the principle thus firmly established that market value 'is not to be proven by evidence of sales of other properties, the price offered, and kindred considerations, we should be surprised to find an exception made in the matter of that which may or may not be a clue in the search for the market value, that is, the net profits derived from the use that is being made of the property. ▮ An exception is not made, but the same rule applies, as we find in *Stock-*

*ton etc. R. Co.* v. *Galgiani,* (1874) 49 Cal. 139. The following quotation from the opinion (p. 140, of 49 Cal.) makes clear its holding:

"2. It appears from the testimony that the land of the respondent Galgiani and others, his cotenants, was planted with vines and cultivated and used as a vineyard. During the progress of the testimony touching the value of this land, a witness was allowed, against the objection of the petitioner, to give his estimate of 'the average annual net profits per acre from the strip taken by the railroad company'. The evidence was clearly inadmissible. The fact to be ascertained was the value of the land at the time of the taking. It is not allowed to arrive at this fact by proof of the annual net profits derived from a particular use. The profit for any year would depend upon many and varying circumstances, such as the nature of the season, the price of labor, the condition of the market as to supply and demand in respect to the particular product, etc. A valuation derived from such evidence would be conjectural and speculative and would not form a proper basis for an estimate of damages." The reasons given for the ruling apply with equal force to the situation presented by the case before us. To accept a statement of net profits as a fact to be taken into consideration in arriving at market value, of necessity opens the door: To an investigation into the accounting system of those operating the plant; into the costs of original installation and replacements; raises questions of efficiency and skill; and leads into innumerable other side roads and alleys. A witness who has given an opinion as to market value, may be asked on cross-examination if he knew of the net profit and what importance, if any, he attached to it, but such questions are permitted to test the value of the opinion ventured, and not because the sum involved is to be made use of by the court or jury as a basis for computing market value. What is said in *De Freitas* v. *Town of Suisun City,* (1915) 170 Cal. 263, 266 [149 Pac. 553], about net income, is unmistakably *dictum,* the decision in that case being that an opinion based on gross income was improperly received. Moreover, the correct method of examining a witness in chief is outlined in the opinion, from which we conclude that the court was not even saying, least of all deciding, that on

direct examination the amount of net income would be a proper subject of inquiry. It appears from the annotation in 65 American Law Reports, 462, that California is to be numbered among the minority of jurisdictions which disapprove of evidence of net income as substantive proof of market value, as it is also among the minority in rejecting evidence of other sales as such proof. (Note, Ann. Cas. 1916E, p. 598 et seq.) But such we find our law to be.

Concluding, therefore, that it was error to receive the evidence to which objection was made, we are next concerned with the question: Was the error prejudicial? We believe it was. The city's highest witness testified that in his opinion the total award should be $58,913. (Its lowest witness said $9,054.) Three of the defense witnesses gave figures ranging from $97,064 to $114,273, and two advanced $131,715 and $146,440 as the amounts the defendants should receive. The court awarded them $119,490. It was evidently defendants' and not plaintiff's theory of the values which governed. The net profits of $6,080 for the year 1928, and the $40,268 that the sublessee received as his share of the total award, are quite consistent, in view of the evidence as to the probable term of future operations. Moreover, we may give heed to the statement of the trial judge at the time he ruled on the objection (*Gregoriev* v. *Northwestern Pac. R. Co.*, (1928) 95 Cal. App. 447 [273 Pac. 84]). His attention had been directed to two cases, *Stockton etc. R. Co.* v. *Galgiani*, (1874) 49 Cal. 139, noted above, and "a very late case from Stockton", to which the trial judge referred in speaking of the "Oakland case" in the following statement: "I think that 49 California is overruled in this Oakland case. I am going to call your attention to page 565. I am only going to read a few lines: 'The reference in the foregoing quotation to the "damsite and adjacent lands" is understandable when read in connection with the instructions of the trial court, which in effect told the jury that the probable profits of the uses to which such property was being put might be considered in fixing the value of defendants' land.' That judgment was affirmed by the appellate court. So your objection will be overruled." From this it is apparent that the trial court believed that the rule in the Galgiani case was no longer controlling, but that the true rule was

that probable profits might be considered in fixing the value of defendants' land. If he so believed, it is only reasonable for us to believe that he gave weight to the evidence which was received by his ruling.

We should not conclude without a word about "this Oakland case". Page 565, from which the trial court read a passage, is found in volume 58 Cal. App. Dec., where *City of Stockton* v. *Ellingwood*, (1929) 96 Cal. App. 708 [275 Pac. 228], was first reported. The words quoted now appear on page 726 (96 Cal. App.) of the last-named report, and refer back to a quotation from *San Diego Land Co.* v. *Neale*, (1891) 88 Cal. 50, 65 [11 L. R. A. 604, 25 Pac. 977]. The instructions referred to in the quotation had been given by the trial court in the Neale case, not in the Stockton case. Of these instructions, the Supreme Court in the Neale case said (p. 64 of 88 Cal.): "But these instructions, given at the request of the defendants, were erroneous, because they, in effect, indorsed the methods of calculations employed by the defendants' witnesses, and informed the jury—at least the jury undoubtedly so understood it—that they might find the value to be what the land was worth to the plaintiff, or another in its situation, and that this might be determined by a calculation of the probable profits from sales of water and water rights at prospective prices." Elsewhere (p. 62 of 88 Cal.) the court had stated: "The following authorities establish the proposition that . . . it is not proper to take into consideration the profits which may result from the use of the land, especially where the profits depend upon the expenditure of large sums of money in carrying out the contemplated enterprise."

For the reasons advanced, we are of the opinion that the judgment should be and it is reversed.

Conrey, P. J., concurred.

HOUSER, J., Concurring.—I concur in the judgment. Not that I am particularly impressed with the "righteousness" of it, but because I believe that (contrary to the rule in many other jurisdictions) it is in accordance with the adopted policy of the law of this state, as expressed in the

several opinions of the Supreme Court and the appellate courts, to which attention is directed in the opinion rendered herein. But aside from such authority, to my mind it is incongruous to, and quite at variance with, our ordinary notions relative to the administration of justice that a judgment must be reversed simply and solely because, according to the "rules of the game" certain facts pertaining to pertinent and concededly relevant conditions, the effect of which would be but to present evidence, from a consideration of which the *ultimate truth* might be ascertained by the court, were "erroneously" admitted in evidence.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 30, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 29, 1932.