[Civ. No. 27714.   Second Dist., Div. Four.   Feb. 8, 1966.]

THE REDEVELOPMENT AGENCY OF THE CITY OF SANTA MONICA, Plaintiff and Respondent, v. JACOB ZWERMAN, Defendant and Appellant.

[Civ. Nos. 28136, 28137.   Second Dist., Div. Four.   Feb. 8, 1966.]

THE REDEVELOPMENT AGENCY OF THE CITY OF SANTA MONICA, Plaintiff and Respondent, v. HARRY WEISS et al., Defendants and Appellants.

(Consolidated Cases.)

Phill Silver for Defendants and Appellants.

Robert G. Cockins, City Attorney, and Robert D. Ogle, Assistant City Attorney, for Plaintiff and Respondent.

KINGSLEY, J.—Plaintiff instituted an action in eminent domain, seeking to condemn certain property of defendant Zwerman, located in Santa Monica. The case was consolidated for trial with similar actions against defendants Harry and Ida Weiss, in which plaintiff sought to condemn two parcels of land involved in the same development project. After a jury trial, verdicts were returned and entered fixing the sum of $57,500 as the fair market value of the Zwerman land and its improvements, $59,000 as the fair market value of one parcel of the Weiss land and $87,500 as the fair mar-

ket value of a second parcel. Motions for new trials were made and denied; defendants have appealed from the judgments on the verdicts, contending that the sums allowed were inadequate.

The amounts of damages awarded by the jury very closely reflected the amounts set by plaintiff's expert witnesses, Clarke Ewing and John J. Gastlin. On the other hand, defendants' expert witness, G. Vern Snorgrass, evaluated each of the properties considerably higher than the jury award. He evaluated the Zwerman property at $85,000, one parcel of the Weiss property at $96,500, and the other parcel at $70,000.

Mr. Snorgrass testified that he made a study of the highest and best use of the property, which he concluded was for continued use as multiple residential purposes; that he used a cost of replacement approach to help him form an opinion of fair market value; and that he also used an income approach. Mr. Snorgrass also testified on behalf of defendants Harry Weiss and Ida Weiss claiming that, in making his evaluation, he used comparable sales, the cost of replacement approach, and the capitalization of income approach. He stated that he did not take into account properties east of Neilsen Way and Main Street because he believed these properties were of a different type neighborhood where there were heavy traffic areas. He also testified that he did not take into account the area east of Main Street as comparable sales, because there were no rear alleys in that area.

Mr. Ewing, one of plaintiff's experts, testified that he used a reproduction cost approach, that he analyzed income and gross return, that he determined the income of the subject properties and that he reduced property to an unfurnished basis.[1] He also took into consideration the narrow streets and old condition of the neighborhood.

Mr. Gastlin, plaintiff's other expert, testified that he obtained an estimate of the costs of reproduction, that he made a summation cost estimate study and an income study and used the market data approach method. He stated that in forming his opinion of value he took into consideration the

---

[1] In 29A C.J.S. 1201, it was stated that "Unless a proper deduction for value of the furnishings is taken into consideration, evidence of rental income from furnished apartments in inadmissible, since such rents reflect the market value of the real estate plus personal property, which is not taken."

highest and best value. He also stated that he took into account the bad condition of and disrepair of the area and the narrow streets.

## I

■ Defendants claim error in permitting the experts for plaintiff to testify, in support of their opinions as to value, as to a number of sales which they had treated as comparable, and as to certain assumptions made by them as to the highest and best use of the properties. However, except for the one matter hereinafter discussed, their briefs cite us to no place in the record where any objection was made to such testimony, nor to any motion to strike it, nor to any other act on their part in calling to the attention of the trial court the contentions which they seek to raise in this court. Our own examination of the record fails to disclose any such action. And, at oral argument before us, counsel for defendants admitted that he sought to raise these points for the first time on appeal.

Assuming that there might be a case in which a trial court had admitted evidence so clearly unfair as to shock the conscience of this court and lead it to consider a point not raised in the trial court, none of the contentions here urged on us fall within that category. Some are mere quibbles, others involve only what seems to us to be an argument that the court should have rejected plaintiff's testimony because defendants' testimony conflicted with it, while others, at best, involve problems in the definition of the term ''comparable sales''; any possible prejudice to defendants could have been corrected by an objection or motion in the trial court. The normal rule, which requires such action is here applicable.

## II

■ Among the sales relied on by Mr. Gastlin, in forming his opinion as to value, were two probate sales. Defendants duly moved to strike this portion of his testimony, urging that probate sales are in the nature of ''forced sales'' and therefore not ''comparable.'' The motions were overruled.

Defendants rely chiefly on the holding in *City of Los Angeles* v. *Deacon* (1932) 119 Cal.App. 491, 493 [7 P.2d 378]. But the holding there was not that evidence of the

prices paid at probate sales were without evidentiary value—in fact the opinion expressly declares the relevancy of such data[2]—but that, under the procedural rules then in force but now repudiated,[3] no evidence of any comparable sale was admissible on direct examination, the expert being limited, on direct examination, to the mere statement of his value estimate. The *Deacon* case was expressly disapproved in *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672 [312 P.2d 680] —the case which changed the older rule and allowed the expert to cite, on direct examination, the bases for his opinion. As we have pointed out, actually, the dicta in *Deacon* supports the ruling of the trial court.

Authority in other jurisdictions gives little support for defendants' position. In *Dietrichs* v. *Lincoln & N.W.R.R. Co.* (1881) 12 Neb. 225 [10 N.W. 718], cited by defendants, evidence of the price paid for the property involved at a probate sale was held inadmissible, not on the ground that it was a probate sale, but on the ground that the lapse of time since that purchase and the large appreciation in property values in the interim rendered that sale too remote to have evidentiary value. In *March* v. *Portsmouth & Concord R.R.* (1849) 19 N.H. 372, evidence of the price paid for the property at a reasonably recent probate sale was held admissible.

Apart from the statement, made without discussion of reasons, by a divided court in one Idaho case (*State* ex rel. *McKelvey* v. *Styner* (1937) 58 Idaho 233 [72 P.2d 699]), and an ambiguous statement in Nichols on Eminent Domain,[4] we are cited to no authority holding that a probate sale is, per se, noncomparable; nor has our own research found any such authority.

On principle we can see no reason to exclude probate sales in arriving at an opinion as to value. The test for determining market value, long established in this state, is as follows:

---

[2] "In arriving at an answer to this question [of value] for himself, a person of ordinary business judgment would want to know the answer to a number of preliminary inquiries. It is just possible he would want to know at what figure the property was assessed by the county assessor. He might find it of interest to know what value was put upon it by the appraisers when it was recently involved in a probate proceeding." (*City of Los Angeles* v. *Deacon, supra* (1932) 119 Cal.App. 491, 493.)

[3] *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672 [312 P.2d 680].

[4] 5 Nichols on Eminent Domain (3d ed.). § 21.32 (pp. 463-465): "Forced sales, such as a sale of real estate by an administrator, a sale under a deed of trust or execution, a sheriff's sale, or a sale upon the foreclosure of a mortgage, are not admissible, because they do not show

". . . the highest price estimated in terms of money which the land would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable." (*Sacramento etc. R.R. Co.* v. *Heilbron* (1909) 156 Cal. 408, 409 [104 P. 979].)

The law has regularly excluded reliance on true "forced sales" such as those under execution, or under foreclosure,[5] but such sales involve the element not only of some haste, but of a compulsion on the part of the property owner to take whatever price is offered by the highest bidder, regardless of its relation to actual value or to the owner's willingness to accept that price. For the same reason, sales at auction, if the sale is "without reserve" are "forced" and inadmissible.

But a probate sale, in this state, has none of these characteristics. They are surrounded by elaborate statutory provisions to insure that the sale price is in accord with the value placed on the property by the inheritance tax appraisers (Prob. Code, § 780 et seq.), the probate court being expressly enjoined to see that the sale price "is not disproportionate to the value" (Prob. Code, § 785). It is true that real property may be sold in the course of probate in order to raise cash, either for the payment of claims or to facilitate division of assets among the heirs or beneficiaries. But private sales not infrequently are made for similar reasons. ▮ In any case of reliance on a sale alleged to be "comparable," the other party may show any special circumstances which render the price atypical. ▮ But the fact that the sale was in probate does not, by itself, show that the price obtained was without value in determining the market value of other comparably situated property. Since defendants here object to the use of the two sales in question solely because they were in probate, and make no contention that they were prevented from showing anything unusual in connection with those sales, the evidence was properly admitted and used.

market value. However, the mere fact that authorization for the sale was judicial does not necessarily bar consideration of the sale if bidding was free and open. Upon the same reasoning public auction sales, too, have been considered."

[5]Cf. *Kansas City & G. Ry. Co.* v. *Haake* (1932) 331 Mo. 429 [53 S.W. 2d 891, 84 A.L.R. 1477]; *West Skokie Drain. Dist.* v. *Dawson* (1909) 243 Ill. 175 [90 N.E. 377, 17 Ann. Cas. 776]; *State* ex rel. *Highway Com.* v. *Rauscher Chevrolet Co.* (Mo. 1956) 291 S.W.2d 89 [55 A.L.R.2d 773].

## III

Defendants also contend that the court erred in refusing to give Defendants' Instruction No. 19, which reads: "You are instructed that it is improper for you to base your awards in this case, on any direct increase or decrease in value arising from the Redevelopment Project.

"On the other hand, *advance public knowledge* of the proposed project may or may not have had some effect upon the general market in the area, and therefore, an indirect effect upon the value of the property being taken. You may not speculate what that effect may or may not have been, but you are to consider the general market as you find it, and if there has been such an indirect effect upon the market, the property owner is still entitled to the full and fair market value of his property upon such market as of the valuation date Feb. 25, 1962.

"You are to determine the fair market value as if no action had been taken toward the acquisition of this particular property for the project."

It is true that the condemnation project is not a factor to be considered in determining the market value of the land condemned. (*City of Pasadena* v. *Union Trust Co.* (1934) 138 Cal.App. 21 [31 P.2d 463].) Courts have, at times, passed on instructions concerning the enhancement or decrease in value resulting from the announcement and initiation of construction of the public improvement for which the property was condemned. However, there was no evidence, from any source, that the property had any special fitness for any purpose other than that used by all the experts on both sides, nor was there any evidence as to any effect on value of the prospect of condemnation. Thus, the instruction was not pertinent to any issue in the case and defendants were not prejudiced by failure to give it. Under these circumstances, we need not consider whether or not the instruction, as phrased, would have been proper on a different record.

## IV

Defendants claim that the court erred in refusing to give their Instruction No. 18, which reads: "The peculiar fitness of the land for the particular purpose, or for particular purposes, is an element in estimating its value, and should be considered by you as a factor in determining market value." Generally, the instructions should

correctly instruct the jury with respect to the use for which the property is reasonably adapted. (*City of Beverly Hills* v. *Anger* (1930) 110 Cal.App. 626 [294 P. 476].) ▮ However, instructions should conform to the evidence and there was no evidence of adaptability of this land to any particular purpose other than use of land for multiple residences. Under these circumstances, defendants were not prejudiced by failure to give the instruction. Also, the court did give an instruction which began: "You must take into consideration the purposes for which the property was adapted. . ." This sufficiently covered the subject matter dealt with in the requested instruction.

## V

Defendants claim that the appraisers for the plaintiff erroneously took into consideration an incorrect formula on rental. This claim is based on the following questions and answers:

"Q. Now, in taking the $920 figure as your gross rental income, did you consider that to be the maximum rental obtained from the highest and best use of this property? A. No. I was considering that property as presently improved.

"Q. And that goes for the two properties; is that not true? A. That's correct."

The quotation is made to us out of context. When the testimony of the witness in question is read as a whole it is clear that there was no error. Admittedly, one factor to be considered in arriving at an ultimate opinion as to value, is a capitalization of income; all the experts here relied on such an element. The language quoted was in connection with this income factor, and that factor only.

## VI

▮ Defendants also claim error in sundry rulings which they contend unduly restricted their right of cross-examination. Without extending this opinion by elaboration of this point, it is sufficient to say that we have read the portions of the transcript referred to and can find nothing which prevented defendants from fully presenting their theory of the case to the jury or from exposing any weaknesses in plaintiff's case. Taken as a whole, the present appeal—apart from the issue as to probate sales—is an attempt to have this court retry the case and accept the conclusions of defendants'

expert in favor of those of the plaintiff's experts which the jury and trial court have found to be the more persuasive. This we have no power to do.

The judgments are affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 5, 1966.